## WHARTON COUNTY DRAINAGE DIST. No. 1 et al. v. HIGBEE et al.†

(Court of Civil Appeals of Texas. Galveston. May 18, 1912. Rehearing Denied June 13, 1912.)

1. CONSTITUTIONAL LAW (§ 290*)—DRAINS (§ 67*) — DUE PROCESS OF LAW—DRAINAGE TAXES.

The levy of assessments and collection of taxes under Acts 30th Leg. c. 40, as amended by Acts 31st Leg. c. 13, providing for the creation of drainage districts and for the issuing of bonds and the levying of taxes to pay them, is not violative of the due process of law clauses of the Constitution of the state (Const. art. 1, § 19) or of the United States (Const. U. S. Amend. 14).

[Ed. Note.—For other cases, see Constitutional Law, Cent. Dig. §§ 73, 76, 91; Dec. Dig. § 290;* Drains, Cent. Dig. § 73; Dec. Dig. § 67.*]

2. DRAINS (§ 79*)—DRAINAGE TAXES—SPECIAL ASSESSMENT—LEVY.

The doctrine that special assessments for local improvements cannot be made without regard to special benefits to the property or in excess of such benefits, or without providing a hearing as to the question of benefits, has no application to a general ad valorem tax on all property of a drainage district created and organized for the purpose of public improvement.

[Ed. Note.—For other cases, see Drains, Cent. Dig. § 76; Dec. Dig. § 79.*]

3. DRAINS (§ 13*) — DRAINAGE DISTRICTS — NATURE.

A drainage district created under authority of Acts 30th Leg. c. 40, as amended by Acts 31st Leg. c. 13, enacted under Const. Amend. art. 3, § 52, expressly authorizing the creation of drainage districts and the levying and collection of taxes therein, stands upon exactly the same footing as a county or precinct or any

---

other such political and established subdivisions.

[Ed. Note.—For other cases, see Drains, Cent. Dig. § 4; Dec. Dig. § 13.*]

4. DRAINS (§ 13*)—DRAINAGE DISTRICTS—POLICE POWERS OF STATE.

It is peculiarly within the general police powers of the state to authorize the organization of drainage districts to be conducive to the public health or for a public benefit or utility.

[Ed. Note.—For other cases, see Drains, Cent. Dig. § 4; Dec. Dig. § 13.*]

5. CONSTITUTIONAL LAW (§ 290*)—DUE PROCESS OF LAW — DRAINAGE DISTRICTS — NOTICE.

The notices provided for under Acts 30th Leg. c. 40, as amended by Acts 31st Leg. c. 13, authorizing the creation of drainage districts, issuance of bonds, and the levy of taxes to pay them, being sufficient* to afford to all persons affected all the notice and opportunity to be heard reasonably necessary for the protection of their rights, are sufficient to comply with the due process of law requirements of the Constitution of the state (Const. art. 1, § 19) and of the United States (Const. U. S. Amend. 14).

[Ed. Note.—For other cases, see Constitutional Law, Cent. Dig. §§ 871–875; Dec. Dig. § 290.*]

6. DRAINS (§ 82*)—DRAINAGE TAXES—SPECIAL ASSESSMENT—VALIDITY.

The fact that such statute does not specifically provide for the equalization of tax assessments does not affect the validity of a tax levied in a drainage district, since not only does such statute contemplate that the valuation fixed upon property by the board of equalization as the regular assessment shall fix its value for the drainage tax, but Acts 32d Leg. c. 118, § 31, provides for the equalization of tax assessments and affords full protection to the taxpayer.

[Ed. Note.—For other cases, see Drains, Cent. Dig. §§ 83–87; Dec. Dig. § 82.*]

7. CONSTITUTIONAL LAW (§ 232*)—DRAINS (§ 2*)—EQUAL PROTECTION—DRAINAGE DISTRICTS.

Since, in the determination of the vital question of the creation of a drainage district and the issuance of bonds and levy of taxes for payment thereof, the owners of personal property have the same power to vote as the owners of realty, Acts 30th Leg. c. 40, amended by Acts 31st Leg. c. 13, authorizing the creation of drainage districts, issuance of bonds, and levy of taxes therefor, does not discriminate against those who own only personal property so as to deprive them of that equal protection of law guaranteed by Const. U. S. Amend. 14, although the only parties who may legally sign the initial petition to contest the creation of the district or contend for its creation, or to appear and object to the location of the canal, ditches, etc., are "freehold resident citizen taxpayers."

[Ed. Note.—For other cases, see Constitutional Law, Cent. Dig. § 686; Dec. Dig. § 232;* Drains, Cent. Dig. § 17; Dec. Dig. § 2.*]

8. CONSTITUTIONAL LAW (§ 45*)—PROVINCE OF COURT.

The court is not justified in annulling the action of the Legislature except in case of clear and unquestioned violation of the provisions of the state or federal Constitution.

[Ed. Note.—For other cases, see Constitutional Law, Cent. Dig. § 42; Dec. Dig. § 45.*]

9. DRAINS (§ 2*) — DRAINAGE DISTRICTS — COMMISSIONERS' COURT — "COUNTY BUSINESS."

A drainage district organized under Acts 30th Leg. c. 40, amended by Acts 31st Leg. c. 13, enacted under express authority of Const. Amend. art. 3, § 52, belongs to a class different from a city or town and is a part of the county, and hence such statute, by imposing upon the commissioners' court certain powers and duties with reference to drainage districts, is not unconstitutional under Const. art. 5, § 18, providing that the commissioners' court shall exercise such powers and jurisdiction over· all "county business" as is or may be conferred by law; the business of the drainage district being county business.

[Ed. Note.—For other cases, see Drains, Cent. Dig. § 17; Dec. Dig. § 2.*

For other definitions, see Words and Phrases, vol. 8, p. 7621.]

10. JUDGES (§ 40*)—DISQUALIFICATION—COMMISSION TO COUNTY JUDGE.

Such drainage law, by allowing the county judge certain commissions on the sale of bonds, is not in violation of Const. art. 5, § 11, providing that no judge shall sit in any case in which he may be interested.

[Ed. Note.—For other cases, see Judges, Cent. Dig. § 185; Dec. Dig. § 40.*]

11. DRAINS (§ 14*) — DRAINAGE DISTRICT — COLLATERAL ATTACK.

A drainage district, being a public or quasi public corporation, its validity cannot, in proceedings to enjoin the collection of a district tax, be collaterally attacked upon the ground that it was not legally created and organized.

[Ed. Note.—For other cases, see Drains, Cent. Dig.. §§ 5, 6; Dec. Dig. § 14.*]

Appeal from District Court, Matagorda County; Wells Thompson, Judge.

Action by R. E. Higbee and others against the Wharton County Drainage District No. 1 and others. From an order granting a temporary injunction, defendants appeal. Order set aside, temporary injunction annulled, and application for such injunction refused.

G. G. Kelley, of Wharton, and Geo. P. Willis, of El Campo, for appellants. Gaines & Corbett, of Bay City, and S. C. Cappel, Jr., of El Campo, for appellees.

REESE, J. This is an appeal from an order of the district judge of the Twenty-Third judicial district, sitting in chambers, granting a temporary injunction, returnable to the district court of Wharton county, upon the application of R. E. Higbee and others, against Wharton County Drainage District No. 1, its commissioners, and the county judge and other officers of Wharton county. The application for injunction was presented to the district judge on January 9, 1912. He set the matter down for hearing before him in chambers at Bay City in Matagorda county, on January 29, 1912. At the same time the judge made an order which appears on its face to grant the temporary injunction prayed for, and to order the defendants to appear before him at the time and place named and show' cause why the "writ of injunction should not be made perpetual." At the hearing it was agreed between counsel for the respective parties, and the district judge, that these terms of the order were incorrect, and that the order and writ granted thereunder were intended to have the effect of a

temporary restraining order, operative until the hearing of the application for the temporary writ, and that the hearing on the 29th of May was to determine whether the temporary writ should be granted. The matter was so treated, and the cause heard on the application for the temporary writ, which was granted.

A very brief statement of the issues presented by the voluminous pleadings will suffice for the purpose of disposing of the questions presented by this appeal.

It was alleged in the petition that upon the petition of the proper number of the freehold resident citizens, taxpayers, and further proceedings thereunder provided by chapter 40, Acts of 1907, as amended by chapter 13, Acts of 1909, Wharton County Drainage District No. 1 had been created and organized, and that the commissioners' court had, by its order, provided for the issuance of bonds of said district to the amount of $350,000, and had levied a tax for the year 1911 of 101 cents on the $100 valuation of all property real and personal in said district, to pay the interest and provide a sinking fund for the payment of the principal of said bonds at maturity. It was alleged that the petitioners were "resident citizens and property taxpayers of said drainage district and owners of real and personal property situated therein," attaching a tabulated statement of said property and the value thereof; the taxes so assessed against this said property being stated to amount to $297.15. Certain irregularities in the holding of said election and counting the votes are charged in the petition which need not be particularly stated here. There was an allegation that the commissioners' court had passed an order accepting the bid of one Myrick for said bonds, and providing that the said Myrick be paid the sum of $35,000 as commissions on said sale. It is made to appear, as to this, however, by the answer of defendants and a certified copy of the order of the commissioners' court, that said court by an order duly made on January 15, 1912, after the petition was filed and before the hearing, rescinded the order for the sale of the bonds to Myrick, and this rather ugly feature of the proceedings disappears from the case. The petition, in addition to the irregularities charged in the proceedings for the formation of the district and issuance of the bonds, attacks the constitutionality of the law under which the district was organized and the bonds issued on the grounds: First, that by the terms of the law personal property taxpayers of the district are not given that equal protection of the laws guaranteed by the fourteenth amendment of the Constitution of the United States, but are discriminated against in not being allowed to join in the petition for the creation of the district, and not being allowed to appear and represent their views upon the hearing as to whether the petition be granted and as to the adoption of the engineer's report, by the express terms of the act; and, second, that the act provides for the levy of taxes for payment of the bonds without regard to special benefits to the property so taxed, or the owners thereof, in contravention to the "due process of law" provisions of both the state and federal Constitutions, and further that such taxation amounts to a taking of their property for a public use without due compensation in violation of the provisions of the Constitution of the state. Other grounds of attack upon the constitutionality of the act are presented in the brief, which will be further referred to hereafter.

The defendants pleaded in abatement that by reason of the provisions of article 24a, chapter 118, Acts 32d Legislature, no suit of this kind could be prosecuted except in the name of the state by its Attorney General, and further that the irregularities in holding the election and counting the votes, as set out in the petition, could only properly be availed of in a contest of said election as provided for by statute for that purpose, and that the validity of the organization of said drainage district could only be availed of in a proceeding in quo warranto, instituted by the state or under its authority, and that the validity of such organization could not be collaterally attacked by plaintiffs, as was here sought to be done. Further answering, defendants demurred generally to the petition and filed several special exceptions thereto, the particular nature of which need not be here set out. Defendants further answered as to the facts denying generally the allegations of the petition and specially certain portions thereof; the answer being sworn to by the county judge, one of the defendants. It does not appear that the answer as to the facts was considered by the district judge. It is stated in appellees' brief that it was not presented nor read, and this is probably true. The district judge overruled the plea in abatement and general demurrer and special exceptions of defendants, and granted the temporary injunction on the ground, as stated in the order, that the "drainage act under which the defendant drainage district was organized is unconstitutional and invalid." It is not indicated in the order upon what particular grounds the act is held to be in violation of the Constitution.

By their fifteenth assignment of error it is urged by appellants that the district judge erred in overruling their general demurrer and in holding the drainage district act in question unconstitutional.

In addition to the grounds on which the constitutionality of the drainage act is attacked in the petition, appellees in their brief present the further contention that by reason of the commissions allowed the county judge on sale of the bonds, by section 28

of the act, that officer is disqualified to discharge the duties imposed upon him by the terms of the act by section 11 of article 5 of the Constitution, providing that "no judge shall sit in any cause where he may be interested," and also that under the provisions of section 18, article 5 of the Constitution, defining the powers of commissioners' courts, such court could not lawfully discharge the duties imposed upon it by the terms of the drainage act.

Without following in regular order the several assignments of error and propositions thereunder, we will dispose of the questions raised by the attack on the constitutionality of the act referred to, addressing ourselves directly to the questions presented, and confining ourselves to those provisions of the act directly involved in the attack upon the law.

[1, 2] The act provides that, after the drainage district is created and organized and bonds voted, the commissioners' court shall levy and cause to be assessed and collected taxes upon all property within the drainage district, whether real, personal, or mixed, or otherwise, sufficient in amount annually to pay the interest on such bonds as it shall fall due, together with an additional amount to be annually placed in a sinking fund sufficient to discharge and redeem said bonds at their maturity. Section 30, Act 1907, as amended by chapter 40, Acts 1909. It is provided that the electors voting upon the proposition to create the district shall also at the same time vote upon the question of issuing bonds and the levying of the tax to pay them. There is no reference in the act to special benefits to the taxpayers as a basis for the levy of the tax, and consequently no hearing is provided for in order to determine the amount of such benefits. Appellees strenuously insist that in this respect the act violates the provisions of section 19 of article 1 of the Constitution of the state that no citizen shall be deprived of his property except by due course of the law of the land, and also of the provisions of section 17, article 1, forbidding the taking of private property for public use without adequate compensation, and that it is also violative of the due process of law clause of the fourteenth amendment to the Constitution of the United States. This result is reached by applying to this case the principles of law announced by the Supreme Court of the United States in the case of Norwood v. Baker, 172 U. S. 269, 19 Sup. Ct. 187, 43 L. Ed. 443, followed by the Supreme Court of this state in Hutcheson v. Storrie, 92 Tex. 696, 51 S. W. 848, 45 L. R. A. 289, 71 Am. St. Rep. 884. Unless this contention of appellees can be sustained upon the authority of these cases and others cited in their brief based upon similar facts, it can find no support. Treating those cases as recognized authorities, let us see what was in fact determined. We quote from

section 1436, vol. 4 (5th Ed.) Dillon on Municipal Corporations, a clearer statement of the real questions decided in Norwood v. Baker and the facts which called for the decision than we could hope to make: "The plaintiff owned a plot of land 300 feet in width situated between two parallel streets and fronting upon one of them. A strip of land 50 feet in width and 300 feet in length through the center of plaintiff's land was taken by the village for the purpose of continuing a street. The municipal authorities were authorized by statute to assess the cost either in proportion to the benefits which might result from the improvement, or according to the valuation of the property assessed, or by the front feet of the property bounding and abutting upon the improvement. The ordinance authorizing the improvement provided that the cost and expense of the condemnation of the property, including the compensation paid to the owners, the cost of the condemnation proceedings, advertising, etc., and the interest on bonds issued, if any, should be assessed 'per front foot upon the property bounding and abutting upon that part of' the street as condemned and appropriated by the ordinance. The result was that the plaintiff's property was not only taken, but the plaintiff was compelled to pay the entire cost of the land so taken and all the costs and expenses connected with the proceedings. It is apparent, upon these facts, that, under the particular circumstances, the method followed amounted to an arbitrary exaction upon the plaintiff that in effect confiscated his property without compensation, and that therefore, by reason of the method followed and independent of any question whether the property was benefited by the improvement, there was a clear deprivation of property without just compensation, in violation of the fourteenth amendment."

The case of Hutcheson v. Storrie was ruled upon a quite similar state of facts. The city of Houston, under the provisions of its charter, sought to improve a public street in said city to the city limits and to tax the costs thereof against the lands of abutting landowners in proportion to their frontage on this street. Mrs. Hutcheson owned a block of 20 acres of land fronting 647 feet on the north side of this street, besides other lots. Her property was situated in a part of the city where there were very few houses of any kind and most of them small and of little value. Much of the property in that vicinity was used for pasturage, and there were in the vicinity no water mains, electric lights, or sewerage. As to whether the value of the property was equal to the amount assessed upon it for the improvement, the testimony was conflicting, and the issue was not determined by the Court of Civil Appeals. Evidence offered by Mrs. Hutcheson that there were no benefits accruing to her

property by reason of the improvement was excluded. It is clear in this case, as in Norwood v. Baker, that the effect of the imposition of the assessment was practically to confiscate the property upon which it was levied. Hutcheson v. Storrie is based entirely upon the decision in Norwood v. Baker, is confessedly in conflict with previous decisions, and rests for precedent authority wholly upon the latter case. It is entirely clear that the decision in Norwood v. Baker, itself in its general expressions apparently not in harmony with former decisions of that court, was induced by the palpable hardship and rank injustice of the facts presented. The general principle of law decided was that, in the cases presented, the making of the special assessments upon the lands of the respective parties to pay for the laying out and improvement of the street without any regard to the benefits to accrue to the property from the work, in effect, was a taking of the property for public use without adequate compensation, and that to do so without providing for a hearing at which the question of benefits could be determined was to deprive the owner of his property without due process of law. All of the cases cited by appellees which seem to support their contention are cases of special assessments for local improvements, or where the tax is levied in proportion to benefits, and none of them, so far as we have been able to find, presents the features of a general ad valorem tax on all property in a district created and organized for purposes of public improvement, as in the present case. There is a wide distinction between a special assessment, as in the two cases referred to, and others along the same line, and the general ad valorem tax provided for in the present case, and the difference is of such a character as to render the cases cited by appellees entirely inapplicable to the present case. We think that it was not in the mind of the Supreme Court of the United States in Norwood v. Baker, nor of the Supreme Court of this state in Hutcheson v. Storrie, that the doctrine announced should extend or apply to such a case as is here presented. The tax here provided for was required to be levied upon all property of every kind in the district at an equal and uniform rate according to its assessed value. In the case of Williams v. Corcoran, 46 Cal. 553, it was held that "a charge imposed by law upon the assessed value of all property, real and personal, in a district is a tax and not an assessment although the purpose be to make a local improvement." A tax imposed on all property in a district comprised in territory within one mile of a proposed turnpike (which were the limits of the proposed district) for the purpose of building the road was held to be a tax and not an assessment in Miller v. Hixson, 64 Ohio St. 39, 59 N. E. 749. In People v. Whyler, 41 Cal. 351, it was

149 S.W.—25

held that "a charge imposed on all property of a district to be used in constructing levees to protect the district from overflow is a tax and not an assessment."

The following clear and exact statement of the essential difference between a special assessment which fell under the ban of the courts in Norwood v. Baker and Hutcheson v. Storrie and an ordinary ad valorem tax on all property in a prescribed district is given in Page & Jones on Taxation by Assessment, §§ 36, 37: "If the charge or exaction is levied upon all the property within the limits of some political unit, such as a city, county, and the like, and if the levy is made in proportion to the valuation of the property upon which it is levied, such a charge or exaction is held to be a tax, and not an assessment, even if it is levied for a purpose for which the local assessment might have been levied. If the charge or exaction is levied upon all of the property in some pre-existing political subdivision of the given political unit, and is levied in proportion to the valuation of such property, such charge or exaction is ordinarily held to be a tax, and not a local assessment. The method of selecting the property which is to bear the burden, in connection with method of apportioning the burden among the property thus selected, shows that the charge was not based upon any theory of special benefits to the property upon which the tax is levied. Thus a tax levied upon all the property in a given ward, for the construction of a bridge, has been held not to be a local assessment, but to be properly classed as a tax in the more limited sense of the term. If a district is created which contains, or is supposed to contain, the property specially benefited by the improvement for which the assessment is levied, and if the exaction is levied upon the property in such district in proportion to the benefits conferred by such improvement, such form of exaction is regularly recognized as a local assessment and not a form of general taxation. A like result is reached if the property which is supposed to be benefited is marked off into an assessment district, and the exaction for the improvement is levied upon such property, in accordance with the frontage. Such an exaction is regularly held to be a local assessment, and not a form of general taxation. If the land which is supposed to be benefited by the improvement for which the assessment is levied is made into an assessment district, and the exaction is appropriated among such property according to the area thereof, such a form of exaction is regularly held to be a local assessment, as distinct from a form of general taxation. A common example of such form of assessment is found in levee districts in which the property which is supposed to be benefited by the levee is often assessed at a certain rate per acre for the purpose

of constructing the levee. Charges of this sort are regarded as local assessments."

We think this is sufficient to show that the authorities so much relied upon by appellees have no application to the present case. Burguieres v. Sanders, 111 La. 109, 35 South. 479.

So far we have conceded the authority of Norwood v. Baker and Hutcheson v. Storrie as settling the doctrine that special assessments for local improvements could not be made without regard to special benefits to the property, or in excess of such benefits, or without providing a hearing as to the question of benefits. The decision in Norwood v. Baker was considered as establishing a new doctrine and as overruling former decisions of that court, and, as we have shown, was rather forced by the hard circumstances of that case. Section 1436, Dillon on Municipal Corporations (5th Ed.). The decision in Hutcheson v. Storrie was bottomed on Norwood v. Baker entirely, was likewise forced by the hard circumstances presented by that case, practically amounting to the confiscation of appellant's property, and it likewise overruled former decisions of the Supreme Court of Texas, notably Adams v. Fisher, 75 Tex. 657, 6 S. W. 772. We cannot regard the later cases of the Supreme Court of the United States of French v. Barber Asphalt Paving Co., 181 U. S. 324, 21 Sup. Ct. 625, 45 L. Ed. 879, Wight v. Davidson, 181 U. S. 371, 21 Sup. Ct. 616, 45 L. Ed. 900, Tonawanda v. Lynn, 181 U. S. 389, 21 Sup. Ct. 609, 45 L. Ed. 908, Webster v. Fargo, 181 U. S. 394, 21 Sup. Ct. 623, 45 L. Ed. 912, Cass Farm Co. v. Detroit, 181 U. S. 396, 21 Sup. Ct. 644, 45 L. Ed. 914, and other cases in the same volume, cited in brief of appellant, otherwise than as overthrowing what had been commonly understood as the doctrine intended to be announced in Norwood v. Baker, 4 Dillon, Municipal Corp. (5th Ed.) § 1436.

Summing up the effect of the later decisions, Judge Dillon says: "As a result of the decisions of the United States Supreme Court, it may be considered as definitely settled that the Legislature of a state may create, or authorize the creation of, special taxing districts and charge the cost of a local improvement, in whole or in part, upon the property in such districts or according to valuation or superficial area, or frontage, without violating the fourteenth amendment of the federal Constitution, and that the whole expense of paving or improving a street or highway may be assessed by a municipality pursuant to statutory authority upon the lands abutting upon a highway so improved in proportion to the feet frontage of such lands without providing for a judicial inquiry into the value of such lands and the benefits actually to accrue to them by the proposed improvements." It is true that the court was, in the cases cited, discussing the effect of the fourteenth amendment of the federal Constitution; but the due process of law provision of that amendment is, so far as this case is concerned, identical with the language of the similar provision of our own Constitution, and, as it deals with the power of the state Legislature, it seems to us would as effectually control it as the cogent provisions of the state Constitution. We must not be understood as denying the force of Hutcheson v. Storrie as binding upon us in a case properly falling within the principles there stated, so long as it is unimpaired by any subsequent decision of our own Supreme Court.

[3] The amendment of section 52 of article 3 of the state Constitution adopted in 1903 expressly authorizes the creation of districts, and the levy and collection of taxes therein, for drainage purposes. The act of 1907, amended in 1909, passed under this constitutional authority, provides for the creation of such districts, prescribing the various steps from the filing of the petition to the commissioners' court setting forth the necessity and feasibility of the scheme of drainage proposed and the boundaries of the district. The court then sets a day for hearing the petition, and notice thereof is given by posting a copy of the petition and orders. If at such hearing the court finds that the scheme of drainage proposed is practicable and feasible and that it is needed and will be conducive to the public health or would be a public benefit or public utility, it shall so declare. The act provides that the court shall then appoint an engineer to make survey and locate the necessary drainage ditches and make report to the court. When the report is filed, the same is set down for a hearing and notices of this hearing given by posting notices. If at this hearing no objection is made to the report, or such objections as are made are found not to be well taken, the report is approved. After all of this is done, the commissioners' court orders an election at which all of the resident property taxpayers in the district shall vote upon the proposition for or against the creation of the drainage district and the issuance of bonds and levy of tax in payment thereof. The law provides that notice of this election shall be given by posting. If two-thirds of the qualified electors shall vote in favor of the proposition, the result is declared by the commissioners' court, and not until then is the drainage district created. The proceedings that follow are the appointment of commissioners for the district, and prescribing their qualifications and duties, the issuance and sale of bonds, and levy of the necessary tax, and generally providing for the work to be done.

[4] It will be observed that something else enters into the question of the creation of such districts than the benefit to or enhancement of the value of the lands in the

district. The court must find that the drainage will "be conducive to the public health or be a public benefit or utility," as a prerequisite to the creation of the district. These are matters that fall peculiarly within the general police powers of the state.

[5] The notices provided for are such as are usual and customary in matters of this kind, and afford to the persons affected all the notice and opportunity to be heard reasonably necessary for the protection of their rights, and due process of law requires no more. 1 Page & Jones on Taxation by Assessment, §§ 121, 122; Paulsen v. Portland, 149 U. S. 30, 13 Sup. Ct. 750, 37 L. Ed. 637; Hagar v. Rec. Dist., 111 U. S. 701, 4 Sup. Ct. 663, 28 L. Ed. 569; Lent v. Tillson, 140 U. S. 316, 11 Sup. Ct. 825, 35 L. Ed. 419; Railroad Co. v. Barber Asphalt Co., 197 U. S. 430, 25 Sup. Ct. 466, 49 L. Ed. 819; Hibben v. Smith, 191 U. S. 322, 24 Sup. Ct. 88, 48 L. Ed. 195; Burguieres v. Sanders, 111 La. 109, 35 South. 479; In re Madera Irr. Dist., 92 Cal. 296, 28 Pac. 272, 675, 14 L. R. A. 755, 27 Am. St. Rep. 106.

Under the amendment of the Constitution referred to, authority is given to the Legislature to create districts different from any of the political subdivisions of the state for the purpose of drainage, and a district of this kind, when created, stands upon exactly the same footing as a county or precinct or any other such political and established subdivisions. The same powers, including the power to levy taxes, may be conferred upon, and exercised by, such created districts as could be conferred upon, or exercised by, any established political subdivision under the act. In its essential elements, in so far as they relate to the questions here presented, there is no difference between a drainage district and a road district or a school district.

Our conclusion is that there is no merit in the contention that the levy, assessment, and collection of taxes under this act is a taking of the property of the taxpayer without due process of law, as forbidden by the provisions of the state or federal Constitutions. The provisions of the Constitution forbidding the taking of private property for public use without adequate compensation have no application to the case. Cooley, Const. Lim. (7th Ed.) 715.

[6] It is objected that there is no provision made in the act of 1907 or 1909 for the equalization of tax assessments, which is done by the present act passed in 1911. Section 31, Acts 32d Leg. p. 256. This, however, is not necessary to validity of the tax. It seems, however, to have been contemplated that the county tax assessor would make the same assessment of the property as in the regular assessment for state and county taxes, and whatever valuation was fixed upon the property by the board of equalization for this purpose would also fix the value of the property for the drainage tax. Under the present law this matter, however, is provided for, and the absence of such specific provision in the act under which this drainage district was created can have no effect on the validity of the tax, nor on the creation of the district. The provisions of the act of 1911 afford a full protection to the taxpayer.

[7] Another objection made by appellees is that, while personal property is taxed to support the work of drainage, the owners of such property are discriminated against in the proceedings for the creation of the district, and are thereby, by the act, deprived of that equal protection of the law guaranteed by the fourteenth amendment of the federal Constitution. This discrimination is alleged to be shown in the following particulars: First. The initial petition must be signed by a certain number or proportion of the "freehold resident citizen taxpayers" of the district. Section 2. Second. Upon the day set for the hearing of the petition it is provided that "any person whose land would be affected by the creation of the district may appear before the court and contest the creation of the district or contend for its creation," etc. Section 3. Third. At the hearing of the engineer's report, any freehold taxpayer of the district whose lands may be affected by said drainage improvements, whether he be a resident of the district or not, may appear and object to the location of the canal, ditches, etc. Section 10.

Questions of public health and general public benefit and utility are to be consulted in the creation of a drainage district, and unquestionably these are matters of great importance. In a large portion of the country contiguous to the coast in this state, the land is flat, and the natural drainage afforded by water courses and other natural outlets for the surface water are entirely inadequate for that purpose, in consequence of which over a large scope of country frequently the water lies as it falls until it sinks into the ground or is taken up by evaporation. Such conditions affect seriously the public health and comfort and add greatly to the inconvenience of travel on account of the difficulty, if not impossibility, of providing highways for such communication. In these matters it would seem that owners of personal property are as much interested as freeholders, and besides personal property is made taxable equally with lands to support the system of drainage. Still, after giving due consideration to all these matters, it is not to be questioned that after all the land is the backbone of the system, the land must pay the bulk of the taxes, and upon the land must be located the drainage canals, ditches, etc. The land is fixed and can never escape this tax. Personal property is transitory. In so far as the hearing upon the engineer's

report is concerned, with regard to the location of the canals and ditches, the owners of the land were the only persons interested. Giving due consideration to these conditions, it was the judgment of the lawmaking body that the peculiar privileges enumerated should be conferred upon freeholders and withheld from those who only paid taxes on personal property. In the determination of the vital question of the creation of the district and the issuance of bonds and levy of taxes for the payment therefor, there was no discrimination. The owner of a pony or a cow upon which he paid taxes, but which he might take out of the district at his pleasure, had as much voice as the owner of a league of land, which was bound for all time for the support of the system of drainage. It was a matter of legislative policy, and it would be, in our judgment, an unwarranted invasion of the province of the lawmaking body for the court to substitute its own opinion and judgment of what was just and proper as to these provisions of the law for that of the Legislature as declared in the act.

[8] Only in case of a clear and unquestioned violation of some provision of the state or federal Constitution by these provisions of the act would any court be justified in annulling the action of the Legislature. That case is, in our opinion, very clearly not presented here.

[9] It is also contended by appellees that the drainage law is unconstitutional under the provisions of section 18, article 5, of the Constitution, with reference to the powers of the commissioners' court. The particular provision alleged to be violated is as follows, after making provision for the election of commissioners: "The county commissioners so chosen, with the county judge, as presiding officer, shall compose the commissioners' court, which shall exercise such powers and jurisdiction over all county business as is conferred by this Constitution and the laws of the state, or as may be hereafter prescribed." In Electric Light Co. v. Keenan, 88 Tex. 201, 30 S. W. 868, it was held by our Supreme Court that the commissioners' court could not be required to perform the duties imposed upon it by an act of the Legislature requiring it to take charge of and administer the affairs of the defunct corporation of the city of Seymour, whose charter had been declared void. The ground of the decision was that this was not "county business" within the meaning of the provisions of the Constitution above quoted. Whether the court could voluntarily exercise such powers is expressly not decided. We confess that it appears to us that, if the commissioners' court could not be required to perform such duties because beyond the powers conferred by the Constitution, for a like reason it could not voluntarily do so, though the court cites the case of Brown v. Wheelock, 75 Tex. 385,

12 S. W. 111, 841, as probably authority for a different holding. We think that there is a clear distinction between a drainage district, as provided for in the act of the Legislature in question, under the express authority of the constitutional amendment with reference thereto and a town or city corporation, with reference to the relation of each to the county business. A drainage district as created under the act in question is a part of the county, in a sense that distinguishes it from a town or city corporation created as a separate entity. Under the provisions of the amendment to the Constitution referred to, the entire county, or any precinct thereof, might be made a drainage district. In such case it seems clear that no one would be heard to say that the business of such drainage district was not county business, within the meaning of the provisions of the Constitution as to the powers of the commissioners' court. When, instead, a district is formed of a part of the county without regard to the lines of any existing political subdivision of the county, there seems no substantial basis for the argument that the business of the creation of such district and the management of its affairs, in so far as they are committed by this act to the commissioners' court, is not county business. Such districts stand upon the same footing in all essential particulars, so far as this objection is concerned, as irrigation districts, navigation districts, road districts, levee districts, school districts, and even local option districts, whether under the provisions of the liquor laws, or with regard to stock running at large in certain territory, all of which, under the provisions of the particular statutes providing therefor, are created and organized under the direction and supervision of the commissioners' court. The argument is made that as to none of these is the commissioners' court given such powers as with regard to drainage districts. That can make no difference, if the principles announced in the Keenan Case have any application. If the business of these various districts is not county business, then under that decision no part of such business can be imposed upon the commissioners' court. It seems clear to us that, if the powers and duties of the commissioners' court with reference to drainage districts cannot be imposed upon said court because not county business, it would be equally powerless to discharge the duties imposed upon it by the various local improvement statutes referred to, with the result of striking down at one blow every act of this kind enacted by the Legislature. It has become the settled policy of the state to confer such powers on commissioners' courts. The executive and legislative departments of the government have construed the constitutional provision referred to as authorizing the exercise of such powers by them, and it would have to be a very clear case that

would justify the courts in holding otherwise, to the destruction of this kind of legislation, with all of its disastrous consequences. It was stated arguendo by the Court of Criminal Appeals, in Chapman v. State, 37 Tex. Cr. R. 167, 39 S. W. 113, in answer to an objection of the same kind with regard to the power of the Legislature to impose upon commissioners' courts the duties imposed upon them by the local option liquor laws, that if the power had not been authorized by the Constitution with reference to such laws, and the jurisdiction of commissioners' courts was specifically defined, there was nothing to prevent the Legislature from conferring this additional jurisdiction. We think that the duties imposed by the Legislature upon the commissioners' courts by the drainage act may fairly be classed as county business, and the objection to the act referred to is not sound.

[10] There is no merit in the contention that the provisions of the act allowing the county judge certain commissions on the sale of the bonds is in violation of article 5, § 11, of the Constitution, that "no judge shall sit in any case in which he may be interested." We think this proposition does not require discussion.

[11] We believe this disposes of all of the constitutional objections to the drainage acts. In addition to these grounds for injunction, appellees in their application for the injunction, and as grounds for the granting thereof, urged that in several particulars the provisions of the act had not been complied with in the creation of the drainage district. Appellants by general demurrer attacked the sufficiency of the petition and by several special exceptions attacked the averments as to each of these several grounds, all of which were overruled.

These matters set up by appellees are in substance, and stated briefly, that resident property taxpayers offering to vote at said election were not permitted to vote unless they owned real estate in the district, without stating how many of such persons were refused the right to vote. It was further averred that "the returns of the election are not in accordance with law in that they do not show for what the election was held."

Certain irregularities in the election returns from some of the voting places are charged, of a kind that could not in any case affect the result of the election. It is not denied that more than two-thirds of those qualified to vote and voting at such election cast their ballots for the drainage district and the levy of the tax and issuance of bonds. It is averred in a vague and indefinite way that the tax levied was not sufficient to pay the annual interest and provide the proper sinking fund; also, that the tax was levied for the year 1911, which was not necessary, as the bonds could not be issued until 1912.

None of the grounds set out were sufficient to authorize the injunction. This is a collateral attack upon the drainage district, which is a public or quasi public corporation. Parker v. Harris County Drainage District, 148 S. W. 351, decided by this court at present term, and cases cited; Crabb v. Celeste Ind. School Dist., 146 S. W. 528, decided by the Supreme Court May 1st; Page & Jones, Taxation by Assessment, § 253.

The invalidity of such a corporation cannot be collaterally attacked upon the ground of failure to comply with the provisions of the law with regard to its creation and organization, by such a proceeding as is here instituted for that purpose. This precise question was decided by this court in the case of Parker v. Harris County Drainage District, supra, and the case of Parks v. West, 102 Tex. 11, 111 S. W. 726, distinguished. In the opinion we referred to the case of Crabb v. Celeste Ind. School Dist., 132 S. W. 890, decided by the Court of Civil Appeals, a writ of error was granted in this case, and the decision of the Court of Civil Appeals on this point was in all things approved, in the following language: "It will be sufficient for the purpose of this opinion to state in a general way that the grounds upon which plaintiffs seek to rid the territory of their residence from its connection with the Celeste Independent School District were certain irregularities in the method of annexation. This subject was fully discussed, and we think properly disposed of, by the Court of Civil Appeals, in its holding that under the pleadings and upon the evidence the additional territory was lawfully annexed. Crabb et al. v. Celeste Independent School District, 132 S. W. 890. By reason of this view it will not be necessary to discuss that feature of the case further than to suggest that, since the Celeste Independent School District, a quasi municipal corporation, was acting under color of law, its legality could only be determined by a suit brought for that purpose in the name of the state, or by some one under the authority of the state, who has a special interest affected by the existence of such corporation. Plaintiffs in the capacity in which they sued could not maintain a cause of action for the purpose of annulling the independent school district. Brennan v. Bradshaw, 53 Tex. 337 [37 Am. Rep. 758]; Graham v. City of Greenville, 67 Tex. 62 [2 S. W. 742]; City of El Paso v. Ruckman, 92 Tex. 89 [46 S. W. 25]."

In addition to this, as was pointed out in the opinion in the Parker Case, supra, by the express terms of section 3 of the drainage act the county commissioners' court is given exclusive jurisdiction to hear and determine all contests and objections to the creation of such districts, and all matters pertaining to the same, and also exclusive jurisdiction in all subsequent proceedings of the district when organized, except as pro-

vided in the act. The learned district judge who granted the injunction did so on the ground that the law under which the district was created was unconstitutional, bringing it within the rule announced in Parks v. West. In this we think he was in error. As to the other objections, as was held by this court in Parker v. Drainage District, referred to, they could only be set up in a quo warranto proceeding at the suit of the state. In support of this conclusion the following authorities are cited in the opinion: 14 Cyc. 1029; Graham v. Greenville, 57 Tex. 68, 2 S. W. 742; El Paso v. Ruckman, 92 Tex. 86, 46 S. W. 25; Tulare Irr. Dist., 185 U. S. 22, 22 Sup. Ct. 531, 46 L. Ed. 773; Blake v. People, 109 Ill. 511; Keigwin v. Combs, 115 Ill. 347, 5 N. E. 575; Osborn v. People, 103 Ill. 227; Payson v. People, 175 Ill. 267, 51 N. E. 588.

None of the grounds set up in the plaintiff's petition were sufficient to authorize the writ of injunction. The order of the district judge is set aside, the temporary injunction is annulled, and the application for such injunction refused.