### BEXAR–MEDINA–ATASCOSA COUNTIES WATER IMPROVEMENT DIST. NO. I v. STATE. (No. 8339.)

Court of Civil Appeals of Texas. San Antonio. Oct. 30, 1929.

Rehearing Denied Nov. 20, 1929.

Templeton, Brooks, Napier & Brown, of San Antonio, for appellant.

D. C. Brown, of Devine, and DeMontel & Fly, of Hondo, for the State.

FLY, C. J. This suit was instituted by appellee, the state of Texas, against appellant, Bexar-Medina-Atascosa counties water improvement district No. 1, to recover taxes for the years 1926, 1927, and 1928, alleged to be due the state and Medina county, aggregating $56,987.15, together with penalties and costs; said taxes having been assessed against lands used for the dam sites, canals, reservoirs, and other purposes for which said district was organized. It is alleged that on or about December 30, 1924, an order was made by the state board of engineers, on petition for an election to create the water improvement district and the election of five directors, which election resulted, according to a canvass of the votes made by the county judge of Medina county, in all 9 votes cast in Bexar county, all 30 votes cast in Medina, and all 9 votes cast in Atascosa county, being in favor of the creation of the district and in favor of the five directors, R. U. Atkins, G. S. Lawrence, B. F. Brewer, Ernest Brown, and W. R. King.

Appellant presented a general demurrer and special exception to the petition, which were overruled by the court, and judgment was rendered for appellee for $57,514.78, and a lien for that sum was foreclosed upon the property of appellant.

In the vast domain of the state of Texas, there are many acres of rich and productive land, especially in the northwestern, western, and southwestern portions, that do not receive sufficient rain to mature the varied crops that can be produced thereon. Much of the portions of Texas mentioned have been blessed, not only with rich soils, but with a splendid climate, conducive to human health and comfort. The variety of crops range from wheat and other small grain in the northern portions to citrus fruit, cotton, onions, all kinds of vegetables, and melons in

the more southern parts; this vast territory ranging in climate from snow and ice to a favored spot where frost rarely comes, and where vegetation flourishes from January to January. All that is needed in this vast territory is a certain source for obtaining an adequate supply of water. Recognizing the potentialities of the territory mentioned, and finding no sufficient constitutional authority for storing and distributing the waters of the state, in 1904 the Legislature submitted an amendment to the people of the state authorizing any political division or defined district to authorize, by a two-thirds vote, the issuance of bonds, within certain defined limits, and levy and collect taxes to pay the interest thereon and provide a sinking fund for the redemption thereof, as the Legislature may authorize; such funds to be used for the following purposes: "(a) The improvement of rivers, creeks, and streams to prevent overflows, and to permit of navigation thereof or irrigation thereof, or in aid of such purposes. (b) The construction and maintenance of pools, lakes, reservoirs, dams, canals and waterways for the purposes of irrigation, drainage or navigation, or in aid thereof." Article 3, § 52, Constitution of Texas.

Under that constitutional provision and the Amendment of 1917 (article 16, § 59, as added in 1917), many water districts have been organized, causing the "Valley of the Rio Grande" to so develop as to become the marvel of the country, and other places such as the "Winter Garden District," the country about Laredo, Eagle Pass, and Del Rio, besides other territory, to constantly grow in wealth from the development of the resources of the soil. The wisdom of the amendments to the Constitution is being fully vindicated in increased population, and in the value of land, and the marvelous progress in wealth and advancement along the lines of modern civilization, and in a vast increase in taxable values in all counties affected by the amendments. No one can deny or minimize the blessing arising from the conservation and proper distribution of the waters of Texas under the amendments, and the statutes enacted by authority thereof, and most citizens will oppose with vigor any acts by state, county, or individuals, tending to check or destroy the progress and prosperity forwarded by the Constitution and statutes. Appropriate laws were enacted by the Legislature to render effective the Constitution, and numerous water districts have been organized thereunder and are subserving the interests of the state in the conservation and distribution of its waters. Among the number of the districts so organized is the appellant, which is serving numerous farmers in the counties of Bexar, Medina, and Atascosa.

There is no controversy about the facts. The district was organized under the statute by a unanimous vote of the land-owning taxpayers, being qualified voters, and the district has been conserving and distributing the waters as required by the statute. Bonds in the sum of $2,500,000 have been voted and issued as authorized by law; the issuance and sale of the bonds following a judgment of the district court of the Seventy-Third district, declaring the validity of the bonds.

■■ The only issue in this cause is: Has Medina county the power and authority to assess and collect taxes, state and county, on the dams, reservoirs, canals, ditches, and other property necessary for the conservation and distribution of waters in the district?

It is provided by article 8, § 2, of the Constitution of Texas, that the Legislature may by general laws exempt from taxation public property used for public purposes, and in pursuance of that authority enacted Rev. St. 1925, art. 7150, in section 4, of which it is provided: "All property, whether real or personal, belonging exclusively to this State, or any political division thereof," shall be exempt from taxation. The very statutory requirements for the creation and formation of water improvement districts would seem to stamp them as political divisions of the state. All the machinery used to form them is through agencies of the state, the county judge, the commissioners' court, the election instrumentalities, the district court to establish the validity of the issuance of bonds, the powers of taxation, restricting the use of such taxation to discharge the principal and interest of the bonds, the election of directors, all these are governmental powers provided for in detail by law. The district is not an ordinary corporation organized for purposes of gain to its members, but is a public agency, using the money raised by taxation to advance the interests of the landowners within its jurisdiction. It is a political corporation or division of the state which has principally for its object the administration of the government, or to which the powers of government, or a part of such powers, have been delegated. Bouvier's Law Dictionary, citing as authority for the definition Winspear v. District, 37 Iowa, 544, and People v. Morgan, 90 Ill. 563. Bouvier distinguishes political rights as those which may be exercised in the formation and administration of the government, from civil rights which a man enjoys as regards other individuals, and not in relation to government. In Georgia, Penick v. Foster, 129 Ga. 217, 58 S. E. 773, 775, 12 L. R. A. (N. S.) 1150, 12 Ann. Cas. 346, it is held: "A municipality is also a mere political subdivision of the state. It is a public corporation having for its object the administration of a portion of the powers of government delegated to it for that purpose." It was further held: "The right of taxation is a sovereign right, inalienable, indestructible, is the life of the state, and rightfully belongs to the people in all republican governments." It was also held that the power of taxation could be delegated to its political divisions.

And we go further and hold that the sovereign power of taxation cannot be delegated to any corporation unless it be a political division of the state.

While the water improvement district is strictly a political division, it is designated a municipal corporation, because it is an organization of a certain geographical district under authority of law and invested with governmental functions. Engleman v. Donna Irr. Dist. (Tex. Civ. App.) 209 S. W. 428; Short v. Gouger (Tex. Civ. App.) 130 S. W. 267; McQuillin Mun. Corp. Supp. 2052.

In Drainage District v. Bank, 143 S. C. 178, 141 S. E. 274, 276, the Supreme Court of South Carolina adopts the definition of a political division of a state formulated by the Supreme Court of New Jersey in State v. Drainage & Water Com'rs of Englewood Tp., 41 N. J. Law, 154, as a division " 'formed for the more effectual or convenient exercise of political power within the' political 'localities.' " The law organizing water improvement districts brings them clearly within the purview of the definition given and places them within the meaning of "political districts" exempted by the Constitution of the state.

It is provided in article 16, § 59, Amendment to the Constitution in 1917, that: (a) "The conservation and development of all of the natural resources of this State, including the control, storing, preservation and distribution of its storm and flood waters, the waters of its rivers and streams, for irrigation, power and all other useful purposes, the reclamation and irrigation of its arid, semiarid and other lands needing irrigation, the reclamation and drainage of its overflowed lands, and other lands needing drainage, the conservation and development of its forest, water and hydro-electric power, the navigation of its inland and coastal waters, and the preservation and conservation of all such natural resources of the State are each and all hereby declared public rights and duties; and the Legislature shall pass all such laws as may be appropriate thereto."

The next subdivision of the section provides for the formation of districts essential to the purposes of the amendment "which districts shall be governmental agencies and bodies politic and corporate with such powers of government and with the authority to exercise such rights, privileges and functions concerning the subject matter of this amendment as may be conferred by law."

Those provisions of the amendment standing alone would create "political divisions" of the state and extend to all districts created thereunder, such as appellant, exemption from taxation, under other provisions of the Constitution. It is a "governmental agency and body politic and corporate," which is a clear definition of a "political division" of the state, clothed with governmental powers and functions and exempt from taxation.

It is the general rule that upon the party claiming an exemption from taxation rests the burden of clearly establishing such exemption, and while we are of opinion that the rule has been met in this case, still in a case involving the very existence of water improvement districts, which are preserving and distributing the waters of the state and from year to year causing the desert places to bring forth abundant crops, and adding to the comfort and sustenance of thousands of people, we feel that any doubt should be resolved in favor of reclamation and preservation rather than taxation, and that a sound public policy would look with small favor upon any action calculated to weaken or impair the efficacy of the agencies adopted by the state for the irrigation of the lands, thereby decreasing their values and decreasing the volume of taxes. Every act or movement having a tendency to impair the efficiency of the constitutional agencies for the reclamation and irrigation of the arid or semiarid acres of the state causes a decrease in the land values to such extent as to seriously affect the taxes of the state.

The question herein considered has never been directly before any Texas court before, although numerous opinions have treated water improvement districts as state agencies and political divisions of the state. The Attorney General's department of the state, in two instances at least, has answered questions involving the issue in this case, and in each instance held that such agencies were not subject to taxation. The first of the questions was answered while Hon. C. M. Cureton, now Chief Justice of the Supreme Court, was Attorney General, and the last was answered during the administration of Hon. Claude Pollard, Attorney General of Texas. The decisions of that department, while not conclusive, are quite persuasive, especially when so strongly fortified by the Constitution and statutes.

The judgment is reversed, and judgment here rendered that appellee, the state of Texas, take nothing by this suit and pay all costs in this behalf expended.