

# THE ATTORNEY GENERAL
## OF TEXAS

GERALD C. MANN       AUSTIN 11, TEXAS

ATTORNEY GENERAL

Honorable Everett H. Cain
County Attorney
Chambers County
Anahuac, Texas

Dear Sir:

            Opinion No. O-2622
            Re: Liability of drainage dis-
                 tricts to outside individuals.

      This department has received and considered your request for an opinion. For convenience, we shall quote the pertinent portion of your letter, as follows:

"A large part of Chambers County is drained by Spindle-top Gulley which is a natural drain but insufficient to adequately drain the particular section through which it flows. Chambers County desires to clean out, widen and straighten said natural drain to improve drainage of said area but is unable to so clean out, widen and straighten said drain to its' mouth because it extends on into Jefferson County where Chambers County has no control. Chambers County has a drainage district extending to the county line, and has the co-operation of said drainage district.

"If Chambers County so opens this natrual drain it is threatened with suits or suits for damages from landowners in Jefferson County resulting from flooding of their lands which will probably occur unless the Gulley is cleaned to its' mouth and, on the other hand, Chambers County must suffer continued flooding of its' lands and bad drainage unless said drain is so improved.

"Please advise your opinion as to whether Chambers County, under such circumstances, would be liable for damages to landowners in Jefferson County in event flooding of their lands resulted from the cleaning out, widening and straightening of said Gulley by Chambers County."

      Drainage districts are creatures of the State Legislature; therefore, any consideration of their rights and liabilities would normally be governed by the statutory provisions which are responsible for their existence. 17 Am. Jur. 789. Provision for drainage districts is made in Articles 8097, et seq. of Vernon's Annotated Civil Statutes. An examination of the controlling statutory provisions, however, reveals no answer to your question.

      A drainage district can neither sue nor be sued unless there exists express statutory authorization. 9 R.C. L. 649. Article 8174, Vernon's Civil Statutes, provides:

"All districts may, by and through their commissioners, sue and be sued in all courts of this State, in the name of such districts, and all courts of this State shall take judicial notice of the establishment of all such districts.

"Drainage districts . . . are political subdivisions of the State of the same nature and stand upon exactly the same footing as counties, or precincts, or any of the other political subdivisions of the State." Jones v. Jefferson County Drainage District, 139 S.W. (2d) 861, error refused, and cases cited therein. L. R. A. 1918 B, p. 1010.

Since drainage districts are regarded as quasi public corporations, and, accordingly, treated as civil divisions of the State for governmental purposes, then, as a general rule, their liability for damages is controlled by the rules which generally determine the liability of governmental subdivisions. 9 R.C. 1. 650.

The mere fact that such districts enjoy the status of being a civil or political division of the State does not totally immunize them against liability for their torts. The State itself must abide certain limitations with regard to the taking or damaging of private property for public use.

Section 17 of Article 1 of the Texas Constitution provides:

"No property shall be . . . damaged or destroyed for or applied to public use without adequate compensation being made . . ."

A drainage district can neither have nor claim a higher right regarding its liabilities than the State iteself. Accordingly, the district is subject to the Constitutional inhibition against taking, damaging or destroying private property without compensation. Peart v. Meeker, 12 So. 490.

But all damages to private property arising from the construction, maintenance, or extension of a public improvement are not included in the constitutional guaranty . Some injuries are treated as damnum absque injuria. Jefferson County Drainage District v. McFaddin, 291 S.W. 323, aff. 4 S.W. (2d) 33, Jefferson County Drainage District v. Langham (C.A.), 76 S.W. (2d) 484. For example, a district might construct, improve, or extend drains to repel surface water, and if done in a careful, reasonable, and prudent manner, escape liability regardless of the geography of the land. See Jefferson County Drainage District v. McFadden, supra.

The old common law rule was that the governmental agency must actually take the property for a public use before the individual would be entitled to compensation. Under that rule, no recovery could be had for mere consequential injury to land.

Today the rule is different. As set forth in 10 Ruling Case Law, at p. 167, the general rule is:

"It is generally held that any definite physical injury to land or an invasion of it cognizable to the senses, depreciating its market value, is a damage in the constitutional sense, regardless of whether it is such an injury as a neighboring owner might inflict without liability at common law."

The Commission of Appeals in the case of Jefferson County Drainage District v. Langham, supra, has definitely placed Texas in that category of jurisdictions which are liberal in their interpretation of what constitutes property damage in the constitutional sense.

In the Langham case the drainage district made certain improvements. They straightened, deepened, and cleaned the natural drainage system. The result of this project was to make plaintiff's land "more subject to overflow and the overflow waters would rise to greater heights." This land's situs was outside that of the district's.

The Court held the district liable in damages in these terms:

"Undoubtedly an action lies against the drainage district in favor of a citizen whose property is damaged as a result of the maintenance of drainage improvements made by the district . . . The action lies even though no negligence on the part of the district occurs in respect of the construction or maintenance of the improvements."

To the defendant's contention that the damage was damnum absque injuria, the Court replied that the district did, to a certain extent, have the right to collect surface water within its territorial area and discharge it into a natural outlet. But this right is not unqualified.

In conclusion, and as our conclusion, we adopt the following section of the Court's decision in the Langham case.

"One owning land on a water course may by ditches and drains turn into it all the surface water that would naturally drain there, but he may not thus discharge into the water course more water than it has capacity to carry, and thus burden his lower neighbor with more than is reasonable." (Underscoring ours)

We note that you inquire whether Chambers County would be liable in damages to Jefferson County landowners in the event their lands were damaged by the proposed improvements. We are aware of no express law or laws authorizing any county in this State to undertake any program as outlined in your letter. Article 8097, Vernon's Annotated Civil Statutes, provides for the establishment of drainage districts within the counties. Obviously, the Legislature, by the enactment of that statutory provisions, intended to provide a method whereby counties might effect or improve drainage. That method provided by the Legislature should be followed where applicable.

However, in whatever form you intended to frame your question, the liability for damages shall be governed by those rules announced in the foregoing; notwithstanding, whether you consider them as county liabilities or drainage district liabilities. This is true for reason that drainage districts and counties "stand on the same footing" and their liabilities are adjudicated accordingly. Jones v. Jefferson County Drainage District, supra; Wharton County Drainage District v. Higbee (Civ. App.), 149 S.W. 381 (Writ ref.), 9 R.C. L. 650.

We do not intend any implication that Chambers County would be authorized to inaugurate or carry out the outlined program in its individual capacity as a county.

Trusting that the foregoing affords an answer to your questions, we remain

Very truly yours

ATTORNEY GENERAL OF TEXAS

By /s/ Wm. J. Fanning

Wm. J. Fanning
Assistant

GW:RS:egw

By /s/ Grundy Williams
Grundy Williams

APPROVED SEP 6, 1940
/s/ Gerald C. Mann
ATTORNEY GENERAL OF TEXAS

APPROVED
Opinion Committee
By B W B
Chairman

This Opinion Considered and Approved
in Limited Conference.