

# THE ATTORNEY GENERAL

## OF TEXAS

PRICE DANIEL
ATTORNEY GENERAL

AUSTIN 11, TEXAS

December 13, 1951

Hon. John H. Winters, Executive Director
State Department of Public Welfare
Austin, Texas

Opinion No. V-1373

Re: Legality of entering into
agreements with Water
Control and Improvement
Districts, Port and Navi-
gation Districts, River Au-
thorities, and City-County
Tuberculosis Control Boards
for Social Security coverage
Dear Sir: under Article 695g, V.C.S.

In your letter requesting the opinion of this office on
the above captioned matter you state that approximately twelve or
fifteen Water Control and Improvement Districts have requested
coverage for their employees under the provisions of House Bill
603, Acts 52nd Leg., R.S. 1951, ch. 500, p. 1480. You also state
that you have received applications for coverage from Port and
Navigation Districts, River Authorities, and City-County Tuber-
culosis Control Boards, and request our opinion as to whether
"water control districts such as described herein and similar or-
ganizations [are] eligible to participate in Social Security bene-
fits under the terms of House Bill 603."

House Bill 603, codified as Article 695g, V.C.S., pro-
vides that the State Department of Public Welfare "is authorized
to enter into agreements with the governing bodies of counties and
with the governing bodies of municipalities of the State which are
eligible for Social Security coverage under Federal law when the
governing body of any of said counties or municipalities desires
to obtain coverage under the old-age and survivor's insurance
program for their employees, . . ." Art. 695g, Sec. 4.

Section 1(f) of House Bill 603 defines municipalities
as follows:

"The term 'municipality' means incorporated
cities, towns, and villages."

Substituting this definition, the State Department of Public Welfare is authorized to enter into agreements only with the governing bodies of counties and the governing bodies of incorporated cities, towns, and villages.

Of course, as pointed out by you, under the Federal Act the Administrator is authorized, with certain limitations, to enter into agreements with a state for the purpose of extending the Federal old-age and survivors insurance system to services performed by individuals as employees of any political subdivision of the state. 42 U.S.C.A. Sec. 418 (a)(1). As originally introduced, House Bill 603 provided that the State Department of Public Welfare was authorized to enter into agreements with the Federal Social Security Administrator for the purpose of extending Federal old-age and survivors insurance coverage to all those authorized to obtain coverage under the Federal Act, that is, to employees of this State, employees of any of its political subdivisions, and employees of any agencies jointly created by Texas and another state or states. The Senate amendments to House Bill 603, which were concurred in by the House May 22, 1951, made numerous changes in the Bill, one of the principal changes being the withdrawal of the authorization to the State Department of Public Welfare to enter into coverage agreements extending old-age and survivors insurance coverage to employees of any of the State's political subdivisions, and the substitution therefor of counties and municipalities. Likewise, the provision which allowed coverage for employees of any agencies jointly created by Texas and another state or states was omitted.

Apart from the statutory definition of municipalities, which we have previously quoted, that term by its accepted and generally recognized definition would not include all the political subdivisions of a state. We quote the following excerpts from 62 C.J.S., Municipal Corporations:

" . . . a municipal corporation is a legal institution formed by charter from sovereign power, erecting a populous community of prescribed area into a body politic and corporate with corporate name and continuous succession and for the purpose, and with the authority, of subordinate self-government and improvement and local administration of affairs of state. . . .

"The foregoing definition impliedly excludes parishes, counties, townships, and districts, which are almost municipalities and yet are deficient in some of the essential attributes of a municipal corporation, while it expresses the complex nature of

the corporation, whereby it acts as a municipium and also as a local agency for administering and enforcing the laws of the state." Sec. 1, pp. 61, 62.

"A municipal corporation is commonly called a 'municipality,' a word formerly employed to designate only the body of officers of the corporation, but now by judicial recognition and common use enlarged to a synonym of the corporation in its entirety. . . .

"The term 'municipality' is all-embracing, and includes cities of all classes, as well as towns and villages; a municipality has been said to be commonly called a city or a town." Sec. 1(d), p. 64.

"Various political or public districts or sections of territory delimited and organized for the performance of particular governmental functions, and various boards or official persons established for public purposes are not 'municipal corporations' or 'municipalities' in the strict sense of these terms; . . ." Sec. 5b (1), p. 75.

In Willacy County Water Control and Improvement Dist. No. 1 v. Abendroth, 142 Tex. 320, 177 S.W.2d 936, 937 (1944), the court said:

" . . . Irrigation districts, navigation districts, levee and improvement districts, and like political subdivisions created under Section 59a of Article XVI of the Constitution, and statutes enacted thereunder carrying out the purposes of such constitutional provision, are not classed with municipal corporations, but are held to be political subdivisions of the State, performing governmental functions, and standing upon the same footing as counties and other political subdivisions established by law. Harris County Flood Control District v. Mann, 135 Tex. 239, 140 S.W.2d 1098; Wharton County Drainage District No. 1 et al. v. Higbee et al., Tex. Civ. App., 149 S.W. 381, writ refused; Bexar-Medina-Atascosa Counties Water Improvement District No. 1 v. State, Tex. Civ. App., 21 S.W.2d 747, writ refused; Engleman Land Co. et al. v. Donna Irrigation District No. 1 et al., Tex. Civ. App., 209 S.W. 428, writ refused; Arneson v. Shary et al., Tex. Civ. App., 32 S.W.2d 907, appeal dismissed, Arneson v. United Irr. Co., 284 U.S. 592, 52 S.Ct. 202, 76 L.Ed. 510; Harris County Drainage District No. 12 v. City of Houston, Tex. Com. App., 35 S.W.2d 118, 120; 44 Tex. Jur., p. 262, § 176."

We, therefore, think it clear that Water Control and Improvement Districts, Port and Navigation Districts, River Authorities, and other similar political subdivisions of the State cannot be included in the word "municipalities" as used in House Bill 603 and are not covered by its provisions.

We pass to a consideration of the applications which you have received from City-County Tuberculosis Control Boards. Article 4437a, Section 6A, V.C.S., provides for the creation of City-County Tuberculosis Control Boards in the event that the governing bodies of the county and of the city or cities within the county adopt the provisions of Section 6A for the purpose of conducting a joint program of tuberculosis control within the city or cities and the county.

Both an annual county and an annual city tax are authorized to be levied to carry out the purposes of Section 6A provided that the tax be submitted to and approved by a majority vote of the qualified taxpaying voters of the city or cities and the county.

In the event the city or cities and the county engage in such program and vote such special taxes, such city or cities and the county have the power to create a City-County Tuberculosis Control Board composed of five members who are appointed as provided in Section 6A(c).

Section 6A(e) reads as follows:

"The Board shall have power to carry out the terms of this section in order to alleviate, suppress and prevent the spread of tuberculosis within the county, as a public health function, subject to the provisions hereof. The funds derived from the special taxes herein authorized shall be combined together by joint action of the county and city or cities and be expended by or under the direction of such Board subject to the limitations herein; provided that such funds shall be expended to provide necessary economic aid to indigent persons suffering from tuberculosis and dependent members of their immediate family, upon certification in each case to the Board by the city or county health officer, to the effect that the persons receiving such aid are indigents, and that they are bona fide residents of the county and have been for more than six months; and such funds may also be expended to provide for administration expenses hereunder, including case investigation and necessary equipment and services, but for no other purposes."

It is well settled that the protection of the public health is one of the first duties of government. 39 C.J.S. 811, Health, § 2. The employees of City-County Tuberculosis Control Boards are engaged in performing services in connection with a governmental function. If either the city or the county were discharging this same function alone, their employees engaged in rendering services in connection with its discharge would clearly come within the provisions of House Bill 603. We think that employees engaged in rendering services in connection with the joint action of the city and county for effectuating the same purpose through these Boards are likewise eligible for coverage under House Bill 603. However, in this connection we call to your attention the numerous provisions of House Bill 603 which require the respective governing bodies of the various counties or municipalities which enter into agreements with the Department of Public Welfare to give assurances of financial responsibility for the participating counties' or cities' share in the program. Of necessity, such guarantees could be made only by the County Commissioners' Court and the governing body of the city or cities creating the particular City-County Tuberculosis Control Board. We suggest that applications for coverage should therefore be made by such authorities rather than by the individual City-County Tuberculosis Control Boards.

## SUMMARY

House Bill 603 of the 52nd Legislature, as amended in the Senate and now codified as Article 695g, V.C. S., does not authorize the State Department of Public Welfare to enter into agreements for Social Security coverage of the employees of Water Control and Improvement Districts, Port and Navigation Districts, and River Authorities, since such political subdivisions do not come within the term "municipality" as used in the Act. The Department is authorized to enter into coverage agreements with the governing bodies of the respective counties and cities which have established City-County Tuberculosis Control Boards pursuant to the provisions of Article 4437a, Section 6A, for coverage of the Boards' employees.

Yours very truly,

APPROVED:

PRICE DANIEL
Attorney General

W. V. Geppert
Taxation Division

Charles D. Mathews
First Assistant

By Marietta M. Sugn Creel
Mrs. Marietta McGregor Creel
Assistant

MMC/mwb