R. W. HAMILTON AND WIFE v. J. J. & J. Q. FLINN, EX'RS.

Forced heirs, as they existed formerly, had no rights in the property of the ancestor which might not be defeated by a change of the law.

A will made previous to the Act of July 24th, 1856, in relation to Wills, is governed by the provisions of that Statute, provided the testator survived its passage.

Appeal from Smith. Tried below before Hon. R. A. Reeves.

The facts of this case present the single question, whether a will is governed by a Statute in force at its date, or by one in force at the death of the testator.

*Tignal W. Jones* and *S. G. Smith*, for appellants.

*J. C. Robertson*, for appellee.

HEMPHILL, CH. J. Isabella Flinn departed this life in 1857 having by will (dated in 1855) bequeathed her estate to some of her children, pretermitting with but a small legacy her daughter Rosabella, the wife of R. W. Hamilton. In the interval between the date of her will and her death, the Legislature, by Act of July 24th, 1856, declared that all persons were thereby authorized and permitted to dispose of their own estate, real and personal, by will or otherwise, and that the 13th and 15th Sections of the Act of January 28th, 1840, entitled "An Act concerning Wills," and the provisions of all other Acts, so far as they conflict with this, be repealed, and that the Act in force from its passage. By the 13th and 15th Sections of Act of 1840, parents were prohibited from disinheriting their children without just cause, or from disposing

freely by will of more than the one-fourth of their property, and it being admitted that this will (if those Sections had continued in force) would have been invalid to the extent that it deprived the daughter Rosabella of the legitimate share of her mother's estate, the question is whether the repeal of all restraints on the testamentary capacity of parents before the death of the testatrix had the effect of validating the bequests of the will. The cause has been very ably and elaborately argued, and the counsel have displayed much industry and discrimination in their researches, and with the lights thus furnished we will consider and dispose of the controversy.

It is conceded that if the will, in the language of the books, speaks from the death of the testatrix, it is valid, although inofficious and defective at its date. As a general rule, a will has been regarded in this State as speaking from the death of the testators. That the instrument was not only his will but his last words, and, as such, operated where the language of the bequest was general upon the whole property of the testator without regard to the senseless distinctions between legacies and devises, or that the latter had been held as extending only to such lands as the testator had at the execution of the will. Such was the rule as to the extent or *corpus* of bequests under the Spanish jurisprudence, and it was expressly enacted by the first Section of the Act concerning Wills, January 28th, 1840, (Hart. Dig. Art. 3252,) declaring in substance that every person of sound mind and of twenty-one years, or upwards, should have power by last will and testament to devise all the lands and personal property which he shall have at the time of his death.

Not only has this been the rule as to the substance of the bequests, viz : as covering everything which the testator died possessed of, but such has been the received construction of the law as to the capacity of the legatees, namely : that their rights under the will, or as against it, in the capacity of forced heirs, depended on the laws in force, not at the date of the

Hamilton v. Flinn.

will, but at the death of the testator. The law of forced heirship had undergone some modifications before its final repeal by the Act of 1856. The ascendants of a person deceased without descendants were his forced heirs under our former laws, but by the Act of December 12th, 1837, authorizing persons to dispose of property by will, it was declared in substance that descendants should alone thereafter be regarded as forced heirs, and all persons having no descendants were authorized to dispose by will, or otherwise, of their estates. (Art. 3251.) These terms are more prospective in their tendency than those of the Act of 1856, but the general understanding was, and has been since the date of the Act, that the will of a person having no children bequeathing his estate to strangers was valid, though he may have had ascendants and though he may have executed the will before, provided his death was subsequent to the passage of the Statute.

Again, the portion of the estate which, under the Act of 1840, might be claimed by the forced heirs as their legitimate share, was not the same in amount as fixed under previous laws. But a will made prior to the Act of 1840, the testator dying afterwards, has been regarded as valid, if it were in conformity with that Act ; that is, if the legitimate shares of the forced heirs were not diminished by more than one-fourth of the estate, though under the law at the date of the will the disposable portion amounted to more than the one-fourth. Nor where a will was executed prior to 1840, the death being afterwards, has there been, it is believed, an inquiry whether the formalities under the former laws, as to the execution of wills, had been observed, provided there were a substantial compliance with those prescribed by the Act of 1840. Such is believed to have been the construction and rule in relation to the matters suggested. That the will speaks as to those matters not from its date, but from the death of the testator, and that it is spoken to and controlled by the laws in force at that time.

The objection to bringing the will of Mrs. Flinn within the influence of the Act of 1856, is, in substance, that this would give the Act a retrospective operation, and if so, it would conflict with the Constitution. To determine upon the soundness of this position it will be necessary to have clear ideas of the meaning of the retrospectiveness or retroactivity of a law, and this is defined with great precision and fullness in Society for Prop. of Gospel v. Wheeler, (2 Gallison, 105,) by Mr. Justice Story, to the effect that a Statute which takes away or impairs a vested right acquired under existing laws, or creates a new obligation, or imposes a new duty, or attaches a new disability in respect to transactions or considerations already past is to be deemed retrospective or retroactive. (Cordova v. The City of Galveston, 4 Tex. R. 470.)

Escriche, in his Dictionary, at the conclusion of a masterly treatise on this subject, says that in the opinion of some, the rule and its modification may be comprehended in the single proposition, namely : that laws do not have a retroactive effect, although they may benefit individuals and the public, unless they prejudice the right of a third person already acquired. The test then, of retroactivity, is not whether a hope, expectancy or a mere inchoate right, but whether a vested right " to possess certain things according to the laws of the land," (3 Dall. 349,) is impaired or defeated.

It is very clear that the rights of forced heirship, under the law of 1840, were, although inchoate, but a mere expectancy during the life of the ancestor, which did not vest nor have vitality until his death ; that the *status* and rights of forced heirs being the creatures of law, must derive their existence and force from the law under which they vest or are brought into existence, viz : the law at the death of the parent. It is his death which gives life and seizin to the heir of his estate.

The right of forced heirs to be protected against changes in legislation injuriously affecting them have been urged on this Court with very great force, but we have held in effect

Hamilton v. Flinn.

that the rights of a forced heir depend on his *status* at the death of the ancestor; that notwithstanding the fiction that the heir and the ancestor were but the same person, yet the heir had no such vested rights during the life of the ancestor as could not be divested by legislation which, prior to the death of the ancestor, changes the order of descent or vests it in others, or which would exclude another heir whose disability from alienage was removed, from claiming a share of the succession. (Lee v. Smith, 18 Tex. R. 144.)

If forced heirs had no rights to the property of the ancestor during his life, which might not be defeated by a change of the law, they cannot object to a repealing Statute conferring power on parents not only to dispose, in the future, of the whole of their property, but also validating their will made previously, provided the ancestor lived until after the passage of the Act. There is nothing retrospective in this. The will is not a perfected act, has no force and can give no rights until the death of the testator. The heirs having no rights cannot complain of an approval by the Legislature, expressly or by implication, of wills previously made but not fixed by the death of the maker.

Was it the intention of the Legislature to embrace wills made but not consummated by the death of the testator prior to the Act of 1856? The act purports to give authority to persons to dispose of their estates by will, and from this there might be an inference that the Act had reference only to future wills. It is apparent, however, that this is but a mere mode of expression.

There was full authority under previous laws to bequeath estates, restrained only by the Sections repealed. The Act is substantially a repeal of those Sections and nothing more. Nor is the form of expression in the Act of 1856 novel or unusual. The Act of December, 18th, 1837, intended as a repeal of so much only of the former law as gave ascendants the rights of forced heirship, purported to be an Act author-

izing persons to dispose of property by will. These Acts do not properly confer power. They only remove restraints. The first Section of the Act of 1840 gave the most ample testamentary capacity, restrained only by the provisions of the repealed Sections, and the repeal was of itself sufficient to give full and undiminished force to the plenary authority under the first Section of the Statute.

There can be no reason why a will, objectionable only on the ground of repugnancy to the repealed sections, should, after the repeal, be still held as defective, although at the time of the repeal the testator was still alive, his will ambulatory and contingent, no vested right to his property having accrued to any one against the will, nor in fact ever could accrue, the law giving such rights being abrogated before the time at which only they could possibly accrue or vest, viz :— the death of the testator. More apt words might doubtless have been employed by the Legislature to express the scope of the Act. Manifestly their object was to get rid of the obnoxious Sections, and their supposed thraldom and oppression. Can it be imagined that a Legislature, imbued with the spirit which dictated the repeal, intended to exclude from the influence of the repeal wills previously made but not fixed by the death of the testator, who may have survived the passage of the Statute for years ? The intention was to cut forced heirship up by the roots. And can a Court require, unless the intention was clearly expressed, that persons should make their wills over again when in every respect, particularly in the matter of forced heirship, they are in exact conformity with the law under which this ceremony of remaking is to be required, and which law was in force at the death of the testator? Would this be equality of rights ? Would it not be a trap to ensnare the unwary, who could not imagine that they must remake wills which are already in exact conformity with the subsisting law ? Would it not be undue homage to the mere shadow of retrospection, which, as to wills, has in fact no sub-

stance until the death of the maker ?   At his death the will speaks.   It gives and takes away rights ; and its dispositions, if opposed to the then existing law, may properly raise the question of retroactivity.

The question here, as before said, is not whether the Act of 1856 is retroactive, but whether the intention was to include previously made wills, provided rights had not become vested by the death of the maker prior to the passage of the Act. And as the terms do not repel this construction, and as this was manifestly within the policy and object of the Act of 1856. we conclude that a will made previous to the Act is within its operation, provided the testator survived the passage of the Statute.

I will now refer to some of the authorities collected and discussed with so much zeal and ability.

The Act of 1 Victoria, (C. 26,) passed in 1837, has but little bearing on the question.   By its thirty-fourth Section it was confined to wills made on and after the first day of January, 1838, and of course could have no influence on wills previous to that Statute.   One of the strongest cases in support of the position, that the inclusion of will (previously made) under the repealing Act of 1856 is not retrospective, is Bishop v. Bishop, (4 Hill N. Y. R. 138.)   The 52d Section of the Revised Statutes of New York, p. 66, passed in 1830, declared that whenever any estate, real or personal, shall be devised or bequeathed to a child or other descendant of the testator, and such legatee or devisee shall die during the life time of the testator, leaving a child or other descendant, who shall survive such testator, such devise or legacy shall not lapse, but the property so devised or bequeathed shall vest in the surviving child or other descendant of the legatee or devisee, as if such legatee or devisee had survived the testator and had died intestate.   Under this Section it was held that where a testator had made his will in 1825, devising certain real estate to his son, and died in 1840, the son having previously died

in 1833, the devisee vested in the children of the son, and not in the heirs at law of the testator. That the will did not take effect until the death of the testator in 1840, and then the case fell under the influence of the new Statute. The terms of the Section, namely : " shall be devised or bequeathed," were apparently prospective ; yet the Court held that devises made before, the testator not dying till afterwards, were within the influence of the Act. The question, as to the operation of Statutes on prior wills, has often arisen on Statutes abrogating that peculiarity under the Common Law, and Statutes of Henry VIII, by which a devise, though general in terms, is held operative only on lands owned at the time of the devise. With the doctrine, or its reasons, we have nothing to do, as it has never been supposed of force in this State.

The language of the Revised Statutes of New Hampshire, amending the former law, is to the effect that any estate, right or interest in any real property acquired by the testator, after making his will, shall pass thereby, if such shall appear clearly to be his intention. In Loveren v. Lamprey, (2 Foster's N. H. 434,) it was held that, since the passage of the Revised Statutes, general words showing the intent of the testator to devise all the estate which he should own at the time of his decease would pass all his property, real and personal, whether owned at the time of making the will or acquired afterwards, and this, whether the will was made before or after the passage of the Statute. The operation of the Statute on prior wills was placed substantially on the ground that they did not take effect until the death of the testator. That no right vested in his property till his death. That the rights of the heirs to lands acquired after the date of the will were in the meantime taken away by the Statute, and that this was not retrospective, as the heirs in the life-time of the testator had no vested right. (6 N. H. 109 ; 8 Paige, 295 ; 12 Met. 169, 262 ; 4 Scammon, 64 ; Elcock's Will, 4 McCord, 39.) In oppo-

sition to these authorities may be cited 5 Watts & Serg. 198 ; Battle v. Spright, 9 Iredell, 288. &c. ; 11 Modern R. 123 ; 2 Md. 310.

By the Louisiana Civil Code, (Art. 1745,) a man or woman who contracts a second marriage, having children by a former one, can give to his wife, &c., only the least child's portion, and that only as an usufruct, &c. By Art. 1455, a donation *mortis causa* is an act to take effects when the donor shall no longer exist. By Art. 1458, it is sufficient if the capacity of giving exists at the moment the donation is made, and Art. 1459, it is sufficient if the capacity of receiving exists at the moment of the acceptance of a donation *inter vivos*, or at the opening of the succession of the testator.

In Criswell v. Leary, (19 La. R. 322,) it was held that the capacity of the donor to give in relation to donations *mortis causa*, reference must be had to the time of the donor's death, because it is not until then that the donation takes effect. So where a husband, having then two children by a former marriage, makes a donation *mortis causa* in his marriage contract of all the property of which he may die possessed and which he may lawfully dispose of to his intended wife, if she survives him, and his children die first, leaving no forced heirs at his death, his wife is entitled, under the gift, to his estate. The irrevocability of mutual donations *mortis causa*, in marriage, was held not to alter the character of the donation, which, being *mortis causa*, was to take effect only at the opening of the succession. There is an analogy between that case and the one on hand. The will of Mrs. Flinn did not take effect until the opening of the succession. At her death there was capacity both to give and receive.

There are many cases in which the will speaks from its date where that is manifestly the intent of the testator.

We are of opinion that there was no error in the judgment and that it be affirmed.

Judgment affirmed.