WILSON et al. v. HEBERT et al.
(No. 6940.)

(Court of Civil Appeals of Texas. Galveston. Feb. 16, 1915. Rehearing Denied March 25, 1915.)

DRAINS ☞18—BONDS—CONTRACTS.

Rev. St. 1911, art. 2600, prohibiting the sale of drainage district bonds for less than par and accrued interest, and providing that as the bonds are sold the moneys received shall be paid to the county treasurer to the credit of the drainage district, is mandatory, and contemplates that contracts for work for a drainage district shall be based on the expectation of payment in money, and where it was contemplated that the successful bidder should find a purchaser for the bonds, the market value of which was less than par and accrued interest, and that the successful bidder would pay the difference between the market value and par value, the transaction was illegal, because com-

pelling·taxpayers to pay the bonds in full while getting in work only the market value.

[Ed. Note.—For other cases, see Drains, Cent. Dig. §§ 11, 13; Dec. Dig. ☜18.]

Appeal from District Court, Jefferson County; W. H. Davidson, Judge.

Action by J. M. Hebert and others against R. W. Wilson and others. From an order granting a temporary injunction, defendants appeal. Affirmed.

Geo. D. Anderson and J. D. Wilkerson, both of Beaumont, for appellants. F. J. & C. T. Duff and Herbert W. Reed, all of Beaumont, for appellees.

McMEANS, J. The appellees· instituted this suit against the appellant R. W. Wilson, county judge of Jefferson county, the drainage commissioners of Jefferson county, Drainage District No. 4, and the Lake Arthur Dredging Company, a corporation, to enjoin the county judge from disposing of bonds of said drainage district until he qualified himself to do so according to law, · and to enjoin the drainage commissioners from entering into a contract with the Lake Arthur Dredging Company for constructing the proposed drainage ditches. A hearing upon the application was had, at which the court heard testimony, and upon the conclusion of the hearing a temporary injunction was granted enjoining the execution of the contract between the commissioners and the dredging company. Prior to the hearing the county judge qualified himself to make sale of the bonds, and that feature of the case is eliminated. From the order granting the temporary injunction the drainage commissioners have appealed. No question is made as to the regularity of ·the proceedings leading to the creation of the district or to the validity of its organization. The only question we feel called upon to consider is the right of the drainage commissioners to enter into the contract with the dredging company for the construction of drainage ditches under the peculiar facts of this case. The court did not hold that the law requires the bonds to be sold before the contract for doing the work could be made, and therefore this point, which is raised by appellants in their brief, need not be further considered.

Plaintiffs, after alleging the organization of the drainage district in the manner provided by law, further alleged that thereafter, upon proper petition, another election was ordered to determine whether the district as organized should be abolished; that pending such election the drainage commissioners advertised for sealed bids for excavating the drainage ditches, and the time fixed for receiving and opening the bids was a date anterior to the date of such election; that the plaintiffs sued out a temporary injunction restraining the opening of said bids and awarding the contract for doing the work before the result

of the election had determined whether the district should be abolished; that thereafter, and on the date when the bids advertised for were to be received and opened and the contract awarded, the defendants secured an order of the court so modifying the injunction theretofore granted as to permit the commissioners to open the bids and award the contract subject to the contingency that the election should result in a failure to abolish the district; that at this time the bonds had not been sold, and the bidders, and others who contemplated making bids for doing the work, were informed that the successful bidder would have to accept bonds in lieu of money in payment therefor; that because of this information several persons who otherwise would have made bids to do the work failed and refused to do so, and had they submitted bids would have bid less than 10 cents per cubic yard for each yard of earth to be removed in making excavations; that 8 cents per cubic yard was reasonable; that but two bids were submitted, one by the Lake Arthur Dredging Company, which bid 10 cents per, cubic yard, which was the lower of the two; that the election to determine whether the drainage district should be abolished thereafter resulted adversely to the movants, maintaining the district as originally organized; that thereafter the contract for doing the work was awarded to the Lake Arthur Dredging Company at 10 cents per cubic yard under a tentative agreement that the bidder was to take the bonds in lieu of cash, and that said dredging company "only agreed to purchase the bonds in consideration that the contract be let to it to do the work at 2 cents per cubic yard higher than they would charge were it being paid in cash, to wit, 10 cents per cubic yard"; that· the pretended and tentative contract in truth and in fact amounts to selling the bonds of the drainage district at 80 cents on the dollar, less accrued interest; that no written and binding contract had been entered into between the dredging company and the drainage commissioners, but that unless restrained they would proceed to enter into the contract before stated. The sixteenth paragraph of the petition is as follows:

"Plaintiffs say they are informed, believe and so charge the facts to be that the contemplated contract with the Lake Arthur Dredging Company is not to buy the bonds and pay cash therefor, as provided by law, but they are to do the work at 10 cents per cubic yard and take the bonds in payment of said work, the price for said work being fixed at such a price as to allow the bonds to be sold at 20 per cent. discount."

Plaintiffs prayed that the drainage commissioners be enjoined from entering into said contract.

We have not attempted to state all the allegations of the petition, but only those upon which our decision is. rested, and in stating these we have given only the substance, ex-

cept such portions as we have copied above; nor have we undertaken to follow the order in which the allegations are made in the petition.

The court in writing found the facts and thereon based conclusions of law, a portion of which we here give:

"First. At the time of the advertisement and receiving and acceptance of the bid, and at the time of the hearing, none of the bonds had been sold nor even offered for sale by the county judge in whom that power rests.

"Second. At none of said times was there any fund or money to the credit of this drainage district to induce bidders to bid for the work, or with which to pay therefor.

"Third. No other method existed to pay for the work as it was done except by the sale of the bonds.

"Fourth. At said time there was no market for said bonds at the price required by statute.

"Fifth. All of the above facts were, at all times, known to the commissioners and the bidder.

"Sixth. All of the parties knew, or contemplated, in view of the above, that the contractor, in order to create this construction fund, would have to find a purchaser for the bonds, the price of which would be less than par and accrued interest, and that in order to satisfy the law and the county judge, as to the price to be paid for the bonds, the contractor would himself have to pay the difference between the statutory and market price. Whether they contemplated it or not, in this event the taxpayers of the district would lose this difference. The contractor, therefore, made his bid high enough to permit him to pay this difference and still allow it a profit, and made his bid considerably higher than would have been done had the proper construction fund existed, or the money been on hand with which to pay for this work. As an illustration of the idea these gentlemen had in trying to meet a law that they could not directly meet, the contractor actually offered this entire issue of $78,500 worth of bonds to W. P. H. McFaddin for 80 cents on the dollar, and had McFaddin bought the same, the contractor would have paid the additional 20 cents and the accrued interest on the entire issue, in which event the drainage district would have lost the 20 per cent. and in addition thereto the accrued interest at the time of the sale on the entire bond issue. The district would thus have received some $15,000 to $20,000 less work for this bond issue, yet would have to pay back in taxes the entire $78,500, with interest thereon each year. To meet this deficiency in the market price of the bonds, the bid made and accepted was for such an amount as would permit the contractor to protect himself on the contract and also to pay the deficiency. This, of course, is contrary to the statute and was never contemplated by law. As a further evidence of the fact that the bid was not made or received as upon a cash basis, no cash existed with which to pay for the work and no market existed by which the bonds could be sold for cash. This condition not only affected the question of a cash basis for the bid, but prevented that competition contemplated by law for the making of bids by others, and did not offer the means contemplated by law by which the work was to be paid for, and no fund existed by which bidders were induced to try for this contract; in fact, nothing existed at the time by which any bidder would be warranted in making any bid on a cash basis. There was not only a lack of cash, but a lack of the means by which to raise it, there being no market for the bond."

The testimony in the record justifies the court's fact findings.

Article 2600, Revised Statutes 1911, provides:

"When such bonds have been registered, * * * the county judge shall, with the additional assistance that the county commissioners' court may direct and authorize, offer for sale and sell said bonds on the best terms and for the best price possible, but none of said bonds shall be sold for less than the face par value thereof and accrued interest thereon; and as fast as said bonds are sold, all moneys received therefor shall be paid by the county judge to the county treasurer, and shall by him be placed to the credit of such drainage district."

The provision in the article which forbids sale of bonds at less than par and accrued interest is clear and mandatory. That it was contemplated that the bids and contract for doing the work should be based upon the expectation of being paid for in money and not in bonds is manifest. If, then, a bidder, in view of the fact that the market value of the bonds is lower than the par value, places his bid at a sum higher than he would have done had the bonds been sold and the proceeds been placed in the county treasury, so as to permit him to pay the difference, the effect is the same as if the bonds had been sold below par. In other words, the sum of money paid by the bidder, if he becomes the contractor, added to the value at which the bonds are sold, bring their sale price to par. But the contractor, to recoup his loss for the sum thus contributed, places his bid at a figure so high that his profits will yield to him the sum so contributed and a reasonable profit beside. The result is that the taxpayer who must ultimately pay the bonds, instead of getting par value for the bonds in work, gets in work only the market value, which is less. This method is only the doing indirectly of that which the law positively forbids, and cannot be tolerated. The illustration given by the trial court, based on the facts proved at the trial, is to the effect that the dredging company, the successful bidder, offered the entire issue of $78,500 of bonds at 80 cents on the dollar, and had the offer been accepted, it would have paid the difference of 20 cents on the dollar in order to make the bonds bring their par value. While this would have had the appearance of a sale at par, the persons for whose benefit the work was being done, and who in the end would have to pay the face value of the bonds and interest, would be getting only 80 cents worth of work for each dollar to be paid by them. This would be violative of both the letter and the spirit of the law.

Again, the facts, as found by the court, that it was contemplated that the successful bidder would have to find a purchaser for the bonds, the market value of which was less than par and accrued interest, and that the contractor would himself have to pay the difference between the market and par values, would necessarily have the tendency, and it was in this case shown to have the effect, of preventing that fair competition in secur-

ing bids for the work that the law contemplated should be had, and no doubt would have been had, if those who made bids and those who intended to bid, but did not, had not been expected to sell the bonds and to make good the difference between the sum for which they were sold and the par value and accrued interest. It cannot be contended that if the advertisement for bids had contained such conditions, bids based thereon could have been properly accepted and a contract awarded thereon; and the facts show beyond question that all the bids made were based upon the conditions above stated.

We think there was no error in granting the temporary injunction, and the judgment of the court below is affirmed.

Affirmed.

⊕⟝For other cases see same topic and KEY-NUMBER in all Key-Numbered Digests and Indexes