### DAVID v. TIMON, County Judge, et al. (No. 5671.)

(Court of Civil Appeals of Texas. San Antonio. Feb. 16, 1916.)

1. DRAINS ⬬⬬2—DRAINAGE DISTRICT—RIGHT TO VOTE.

As Const. art. 3, § 52, merely secures to the people of a drainage district the right to vote on whether to issue bonds, Vernon's Sayles' Ann. Civ. St. 1914, arts. 2477–2625r, prescrib-

---

⬬⬬For other cases see same topic and KEY-NUMBER in all Key-Numbered Digests and Indexes

ing the method of issuing drainage bonds, are not invalid; vote being provided for.

[Ed. Note.—For other cases, see Drains, Cent. Dig. § 17; Dec. Dig. ⚖2.]

2. DRAINS ⚖20 — DRAINAGE DISTRICTS—STATUTES.

While Vernon's Sayles' Ann. Civ. St. 1914, art. 2597a, prohibits the institution of any suit which seeks to enjoin or contest the validity of the formation of any drainage district, or bonds issued, except in the name of the state by the Attorney General, a citizen taxpayer may attack the constitutionality of drainage laws or enjoin the issuance of drainage bonds where the officers issuing them have not complied with the law.

[Ed. Note.—For other cases, see Drains, Dec. Dig. ⚖20.]

3. CONSTITUTIONAL LAW ⚖143, 190—RETROACTIVE LEGISLATION—VALIDITY.

Where the law under which issuance of bonds by a drainage district was voted provided that the commissioners' court should not sell the bonds for less than their face par value and accrued interest, such law became part of the contract, and Acts 34th Leg. c. 33, providing that where drainage districts already organized have authorized the issuance of bonds, the county judge may sell bonds at not less than 90 per cent. of their face value and accrued interest, is retroactive, other provisions of the law showing that it was not to apply to bonds to be issued in the future, and so is invalid under Const. art. 1, § 16, prohibiting bills of attainder, ex post facto law, or retroactive law, or any other law impairing the obligation of a contract.

[Ed. Note.—For other cases, see Constitutional Law, Cent. Dig. §§ 346–348, 531–533; Dec. Dig. ⚖143, 190.]

4. DRAINS ⚖18 — DRAINAGE BONDS — ISSUANCE.

Unless the county judge has given the bond required by Vernon's Sayles' Ann. Civ. St. 1914, art. 2601, providing that before the county judge shall be authorized to sell any drainage bonds he shall execute a bond to the commissioners of such district for an amount not less than the amount of the bonds issued, conditioned upon the faithful discharge of his duties, he may be enjoined from disposing of drainage bonds.

[Ed. Note.—For other cases, see Drains, Cent. Dig. §§ 11, 13; Dec. Dig. ⚖18.]

5. DRAINAGE ⚖18—DRAINAGE BONDS—ISSUANCE.

Where drainage bonds to run 40 years were authorized by vote of taxpayers, the commissioners' court cannot issue bonds running only 25 years.

[Ed. Note.—For other cases, see Drains, Cent. Dig. §§ 11, 13; Dec. Dig. ⚖18.]

6. DRAINS ⚖66—BONDS—TAXES.

As Vernon's Sayles' Ann. Civ. St. 1914, art. 2603, makes it the duty of the commissioners' court, when any drainage bonds have been voted, to levy and cause to be collected a tax on all property within the district to pay the interest on such bonds and provide a sinking fund, such tax should be levied as soon as the bonds have been voted, and where they were voted in the middle of the year, the assessment cannot be attacked on the ground that it was levied for only part of the year, notwithstanding assessments for taxes are made on all property held by the owner on January 1st of each year.

[Ed. Note.—For other cases, see Drains, Cent. Dig. § 177; Dec. Dig. ⚖66.]

7. APPEAL AND ERROR ⚖916—PRESUMPTIONS—PLEADINGS NOT DENIED.

Where the averments of a petition praying a temporary injunction were not denied, they must, for the purposes of an appeal from a judgment denying the writ, be treated as true.

[Ed. Note.—For other cases, see Appeal and Error, Cent. Dig. §§ 3699–3705; Dec. Dig. ⚖916.]

Appeal from District Court, Nueces County; W. B. Hopkins, Judge.

Action by J. G. David against Walter F. Timon, County Judge, and others. From a judgment denying a temporary injunction, plaintiff appeals. Reversed, and temporary writ ordered issued until the case. should be disposed of on the merits.

H. M. Holden and E. B. Ward, both of Corpus Christi, for appellant. R. B. Russell, of Corpus Christi, for appellees.

FLY, C. J. This is a suit instituted by appellant to restrain the sale of certain drainage district bonds. It was alleged, in substance, that appellant was a resident taxpayer of drainage district No. 2, in Nueces county; that Timon was the county judge and T. M. Lawrence, C. C. Wright, J. C. Baldwin, and John T. Bartlett were the county commissioners of Nueces county; that under the authority of chapter 118, Acts 32d Leg., as amended, the voters of the district, on June 17, 1915, had voted drainage bonds in the sum of $154,429.25, bearing 5 per cent. interest; that district commissioners were appointed on August 11, 1915, and the commissioners' court ordered the bonds to be issued, the first to be payable August 1, 1916, and one on that date for each year for 25 years; that the bonds as voted by the people were to mature in 40 years; that the bonds were placed in the hands of W. F. Timon, county judge, to sell and to receive the proceeds thereof; that a tax of 50 cents on the $100 was levied to pay interest and create a sinking fund; that no order was made requiring the county judge to execute the bond required by the statute, and no such bond has been executed. The validity of the tax and the constitutionality of chapter 118 was attacked. It was further alleged that the act of the Thirty-Fourth Legislature (Acts 34th Leg. c. 33), amending chapter 118, because it provides that drainage bonds may be sold at not less than 90 per cent. of their face value, is in violation of the federal Constitution and the state Constitution. Many reasons are advanced in the petition why the law as to drainage districts is unconstitutional and why the proceedings of the commissioners' court are invalid. It was also alleged that the county judge had failed to give the bond required by law, and was about to dispose of the bonds for less than their par value; that an attempt was being made to collect taxes assessed for 1915, although the bonds were not issued until the latter part of that year, and a temporary writ of injunction was prayed for to prevent the sale of the bonds and collection of

⚖For other cases see same topic and KEY-NUMBER in all Key-Numbered Digests and Indexes

the taxes. The court denied the writ on the ground, as recited in the decree, that:

"It appearing that said suit is an attack upon the validity of Nueces County Drainage District No. 2, and that the same is a public, or quasi public, corporation and that said district as created cannot be attacked except in the name of the state of Texas by the Attorney General upon his own motion, or upon the motion of any party affected thereby upon good cause shown, and that the plaintiff herein, J. G. David, is without authority and capacity to bring this suit."

From that order this appeal has been perfected by appellant.

[1] The attacks upon the constitutionality of the drainage·act which is found in title 47, arts. 2477 to 2625r, inclusive, Vernon's Sayles' 'Ann. Civ. St. 1914, are not meritorious, and the matters set up in the attacks have been decided adversely to appellant in the case of Holt v. State, 176 S. W. 743. The Legislature has not denied the people of any drainage district any right guaranteed to them. Only the right to vote on whether or not any certain drainage district shall issue bonds is given the people by article 3, § 52, of the state Constitution. The Legislature is in terms authorized to provide the ways and means to carry the provision into execution. As said by Chief Justice Pleasants, of the First District, in the case cited:

"The power to determine whether the bonds should be issued and the tax levied and collected is vested absolutely in the voters of the district, but when this power has been exercised, the actual issuance of the bonds, and the levy, assessment, and collection of the taxes, shall be done in such manner as the Legislature may authorize, and this provision of the Constitution cannot be construed as prohibiting the Legislature from placing upon the commissioners' court the duty to issue the bonds and levy, assess, and collect the taxes authorized by the voters of the district."

The Constitution itself prescribes that the voters shall be property taxpayers who are qualified electors of the district or territory. That the drainage act does not violate any provision of the federal or state Constitutions is held in a well-considered opinion by Judge Reese of the Court of Civil Appeals of the First District, in the case of Wharton Drainage Dist. v. Higbee, 149 S. W. 381, and a writ of error was denied by the Supreme Court. None of the constitutional objections to the act can be maintained, and this is well settled by the decisions cited.

[2] Appellant alleged that he was a property taxpayer residing in the district, and he was fully authorized to institute the suit upon his own motion and without being joined by the Attorney General of the state. Article 2597a, Vernon's Sayles' Ann. Civ. St. 1914, prohibits the institution of any suit which seeks to contest or enjoin the validity of the formation of any drainage district or bonds issued, except in the name of the state, by the Attorney General, but no citizen is deprived of the right to attack the constitutionality of the law authorizing the formation of such district, nor does the law de-prive any citizen taxpayer of the right to enjoin the acts of any officer not done under and by virtue of the authority of law. To say that the county judge has not given a bond as required by law, and therefore has no right to sell bonds, or to say that he is endeavoring to sell the bonds below par; or that the electors voted 40-year bonds, and that the commissioners' court has ordered 25-year bonds, is not an attack upon the validity of the formation of the drainage district, or upon bonds issued under the provisions of the law. It is an effort to restrain acts in contravention of the law, and under the allegations of the petition appellant had the right to demand protection against the unlawful acts of the county judge and commissioners' court. As said by the Supreme Court in Parks v. West, 102 Tex. 11, 111 S. W. 726:

"Certainly a property holder has the right to say to the court that he is protected by the Constitution from the imposition of a tax by persons to whom the Constitution, in effect, denies such power."

In the case of Morris v. Cummings, 91 Tex. 618, 45 S. W. 383, the general rule was laid down that in any case in which the collection of an illegal tax is sought to be enforced, any one or more of the parties sought to be subjected to the imposition may invoke the interposition of a court of equity to restrain the collection.

We are not called upon to pass upon the authority of the Legislature to prevent a citizen from instituting suits to protect himself from the imposition of taxes by an illegal district or corporation, but it is significant that article 2597a closes with this proviso:

"If for any reason the provisions of this section shall be held invalid, the same shall not in any manner affect the other provisions of this act."

It is evident that the Legislature had doubts or fears as to the validity of the article in question. However, even under its terms, appellant had the authority to prosecute this suit.

[3] The taxpayers of the drainage district voted to issue the bonds with the provisions of the law in view, and they became a part of the contract entered into by the voters, and any taxpaying voter in the district has the right to demand that the law shall be complied with before his property shall be taxed. The statute provides that the county judge shall, with assistance directed and authorized by the commissioners' court—

"offer for sale and sell said bonds on the best terms and for the best price possible, but none of said bonds shall be sold for less than the face par value thereof and accrued interest. thereon," etc.

That law was in effect when the bonds were voted by the taxpayers of the district. It was a part of the consideration the voters had in contemplation, and it was very important because, if the bonds were sold for a less sum than the face par value, less money would be realized for drainage purposes, and

the burdens of taxation would be just the same as though par value had been received for the bonds. The election on the issuance of the bonds was held on June 17, 1915, and on June 19, 1915, the act found on page 59, General Laws of the State of Texas, passed by the Thirty-Fourth Legislature, went into effect, in which it is provided that where drainage districts already organized have authorized the issuance of bonds bearing interest at a rate not exceeding 5 per cent. the county judge may sell said bonds at not less than 90 per cent. of their par face value and accrued interest. In the same section 28 of the act it is provided:

"But in no event shall said bonds be sold for less than the face par value thereof together with the accrued interest thereon"

—and the provision in regard to selling below par value is sought to be applied to bonds already authorized to be issued; that is, the Legislature, recognizing the absolute necessity of preventing bonds thereafter issued to be sold for less than par value, deliberately proceeded to authorize sales of bonds, issued under an act providing for sales at not less than par, at 90 per cent. of their face value. Why the people who had voted bonds under the old law should be placed at such a disadvantage as to their bonds is not apparent, and no valid reason can be given for such retroactive legislation. The act is not curative, nor for the protection of innocent purchasers, for it has reference to bonds merely authorized, and does not refer to their issuance and sale. If the Legislature, after bonds have been voted under a law then in existence, can authorize the sale of them below par, the interest on them could be increased by the Legislature, and the whole contract changed in other respects. There can be no doubt that the provision in the law in effect when the bonds were voted was mandatory and binding upon every one concerned. It became a part of the contract for the issuance and sale of the bonds, and was a part of the consideration for the authorization of their issue. Wilson v. Herbert, 174 S. W. 861; Dillon, Mun. Corp. § 895. The effect of the legislative act of the Thirty-Fourth Legislature was to materially change and impair a contract entered into by taxpayers in certain drainage districts. The Constitution of Texas (article 1, § 16) provides:

"No bill of attainder, ex post facto law, retroactive law, or any other law impairing the obligation of contracts, shall be made."

Every statute which takes away or impairs vested rights acquired under existing laws, or creates a new obligation, or imposes a new duty, or attaches a new disability, in relation to transactions or considerations already past, must be deemed retroactive. De Cordova v. Galveston, 4 Tex. 470; Hamilton v. Flinn, 21 Tex. 713; Sherwood v. Fleming, 25 Tex. Supp. 408.

The provision of the state Constitution is broader and more far-reaching than the similar provision in the Constitution of the United States. The Supreme Court of Texas shows this in the case of Mellinger v. Houston, 68 Tex. 37, 3 S. W. 249, and holds:

"The making of it evidences an intention to place a further restriction on the power of the Legislature, and it must be held to protect every right, even though not strictly a right to property, which may accrue under existing laws prior to the passage of any act which, if permitted a retroactive effect, would take away the right. A right has been well defined to be a well-founded claim, and a well-founded claim means nothing more nor less than a claim recognized or secured by law."

The test as to whether a law is or is not retroactive is whether a vested right to possess a certain thing is impaired or defeated. Hamilton v. Flinn, herein cited. The voters of the drainage district had voted bonds under a law which secured to them the right to have their bonds sold for no sum under their face par value, and that valuable right was sought to be impaired by a law which permitted them to be sold at 90 per cent. of their par value, entailing a loss on the district of over $15,000. This is a substantial vested right, of which they cannot be deprived by a Legislature. As hereinbefore mentioned, the law in question is made to bear upon those districts that had previously provided for issuing bonds, but had not sold them. The law was intended to be, and substantially states that it was, enacted to affect bonds already voted. If any reason existed for the former law, requiring that bonds should not be sold for less than their par value, and for the present law, declaring the same thing as to all other bonds except those mentioned, it exists in regard to the districts singled out for legislative attack. The law is a wholesome and just one, which prevents the exploitation of the people's money, and saves them from the burdens of taxation for something they never received. Being good for one district, the law prohibiting the sale of bonds for less than par value, with accrued interest, is good for them all, and the Legislature has no authority to impair or destroy this vested right.

[4] It is alleged in the petition, and for the purposes of this appeal the allegation, in the absence of denial of its verity, will be taken as true, that the bonds had been placed in the hands of the county judge by the commissioners' court, and he was directed to sell them, and that no bond had been required or given by him. In article 2601, Vernon's Sayles' Ann. Civ. St. 1914, it is provided:

"Before the county judge shall be authorized to sell any of the drainage bonds, he shall execute a good and sufficient bond, payable to the commissioners of such drainage district, to be approved by such drainage commissioners, for an amount not less than the amount of the bonds issued, conditioned upon the faithful discharge of his duties."

Without the execution of the statutory bond, the county judge was not authorized to negotiate the sale of the drainage bonds, and upon that allegation, had there been no oth-

er, the injunction should have issued. The taxpayers have the right to claim the statutory protection given them by the execution of a bond.

[5] It seems that the bonds voted by the taxpayers of the district were to run for 40 years, and it is alleged in the petition that bonds have been issued, the last of which will mature in 25 years. This will of course necessitate the levying of a heavier annual tax than if the last bond matured in 40 years, but if it did not, the commissioners' court is attempting to issue bonds not authorized by the taxpayers of the district.

The bonds must be issued and sold according to the very terms of the submission of the matter to the voters, and no material departure from the terms can be tolerated. The bonds were voted to run for 40 years, to be sold for their face par value and accrued interest by an officer under bond as required by statute. The property of the taxpayers, to the extent of the taxes, is bound for the face value of the bonds, no matter for what they might be sold, and they have a vital interest in seeing that no part of the amounts shown by the face of the bonds is diverted from the purpose for which they were voted. They contracted to pay the interest and principal of the bonds so arranged as to run for 40 years, the amounts realized to be used for drainage, and not that a portion of the amount of the bonds should be paid as a discount to purchasers, and the taxpayer has the right to invoke the aid of the courts to see that the officers issue and sell the bonds according to law.

[6] Assessments for taxation are made on all property held by the owner on January 1st of each year, and that assessment forms the basis and is essential to the levy and collection of taxes. All property held and owned on the 1st day of January of each year is bound for and subject to the taxes levied during that year, whether such levy be made in the beginning, the middle, or the last of the year. The rates of taxation for counties or subdivisions thereof are made by the commissioners' court. It is made the duty of the commissioners' court, whenever any drainage bonds shall have been voted, to levy and cause to be assessed and collected a tax upon all property within said drainage district, whether real, personal, mixed, or otherwise, sufficient in amount annually to pay the interest on such bonds as they shall fall due, together with an additional amount to be annually placed in a sinking fund sufficient to discharge and redeem said bonds at their maturity. Vernon's Sayles' Ann. Civ. St. 1914, art. 2603. That levy must be made at any time during the year that the issuance of the bonds may be authorized. The tax is levied as soon as it has been ascertained that the bonds have been voted, and the levy is made in a sufficient amount to pay the whole principal and interest divided into annual payments. The allegation, therefore, as to the tax being levied for only a part of the year is without merit. In this regard the commissioners' court was following the terms of the law in providing for the annual interest and sinking fund sufficient to pay off the bonds at maturity.

[7] There was no denial of the facts alleged in the petition, and for the purposes of this appeal they must be taken as true, and, under the allegations, the case should be held in statu quo until it is tried on the merits.

The judgment of the lower court is reversed, and a temporary writ of injunction is ordered by this court, restraining the county judge and commissioners as a court or individually from any further acts or proceedings with the drainage bonds until this cause is tried on its merits, and it is further ordered that the clerk of the district court shall at once issue the writ of injunction herein allowed.